[S.F. No. 23310. In Bank. Dec. 15, 1975.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF MONO COUNTY, Respondent;
DONALD J. ZOLNAY et al., Real Parties in Interest.

COUNSEL

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Arnold O. Overoye, Eddie T. Keller, Peter J. McBrien and G. Michael Gates, Deputy Attorneys General, for Petitioner.

No appearance for Respondent.

Chapman & Fowles and Don L. Chapman for Real Parties in Interest.

OPINION

**RICHARDSON, J.**—Defendants Donald J. Zolnay and Gunter E. Voelpel were charged in separate indictments with burglary. (Pen. Code, § 459.) The trial court granted defendants' motion to suppress both their confessions and evidence in the form of certain property recovered following the confessions. The People by petition for mandate seek review of that order. We conclude that the order was correctly entered, and accordingly deny the requested relief.

In March 1973 a cabin at a ranch resort in Mono County was burglarized. Sheriff's Deputies Wilmot and Strong began an investigation which led them to suspect that defendants had perpetrated the crime. They first interrogated Zolnay and Voelpel at Voelpel's motel room. In the course of this initial interview both defendants were advised fully of their constitutional rights as required by *Miranda v. Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]. Both denied any involvement in the burglary.

Pursuant to their agreement, on the morning following the initial interrogation defendants appeared at the Mono County sheriff's substation for further questioning. During the next hour or hour and a half, they were fingerprinted and questioned separately. They were not again readvised as to their *Miranda* rights. When Deputy Wilmot told both defendants that he thought they were guilty, Zolnay did not respond, but Voelpel denied their guilt.

Wilmot and Strong then interviewed the defendants together in a single room and confronted them for the first time with some of the information they had gathered through their investigation. Both deputies then asserted to defendants that they thought defendants were guilty.

At this point, defendant Voelpel stated either "I guess we need a lawyer" or "Do you think we need an attorney?" (Voelpel's precise statement or inquiry is not clear and the record discloses varying accounts.) Deputy Wilmot answered affirmatively, adding that defendants had been advised the previous day of their right to counsel. Wilmot was then asked whether he could recommend an attorney. He answered that he could not, but advised the defendants that several local attorneys were listed in the telephone directory and suggested that they choose one to call.

Deputy Strong then repeated to defendants that he felt they were guilty and that the investigation would continue until the facts were determined. He said further that defendants could make the officers' jobs "easy" or "tough." Advising Zolnay and Voelpel to talk the matter over, the deputies then left them alone, with access to a telephone directory, for five or ten minutes.

When the deputies returned, they asked defendants whether they had made any decisions. Zolnay responded, "Well, I cannot speak for Mr. Voelpel but as for myself I would like to get this off my conscience and that we did in fact commit the burglary . . . ." He said that he had been worried and upset, had discussed the situation with his wife the previous night, and had talked with Voelpel about returning the property.

Zolnay proceeded to describe the crime at length. Voelpel contributed details omitted by Zolnay. Written statements were subsequently taken. The defendants then accompanied the deputies to retrieve the property taken in the burglary from the place where the defendants had hidden it.

Defendants moved under Penal Code section 1538.5 to suppress the confessions. (Unless otherwise indicated, all references are to the Penal Code.) The trial court amended the motion to include suppression, as well, of the physical evidence seized following the confessions and granted the motion in its entirety. The People now ask us to issue a writ of mandate directing the trial court to vacate its order contending that the trial court had no power to order the confessions suppressed in proceedings conducted pursuant to section 1538.5, and that the physical evidence and the confessions were properly obtained.

■ We first consider the procedural issue raised by the People's contention that the trial court acted in excess of its jurisdiction in suppressing the confessions at a section 1538.5 hearing. Defendants initially moved to suppress only their confessions. As noted, the trial court, with defendants' consent, amended this motion. The People assert that a defendant may move under section 1538.5 to suppress only the products, tangible or intangible, of an unlawful search and seizure. They also argue that the trial court acted beyond its authority in expanding defendants' suppression motion under section 1538.5 to include the physical evidence seized subsequent to the confession. The usual sequence of events is discovery of the contraband, then the confession. In the matter before us, this order was reversed.

The People's interpretation of the scope of section 1538.5 is correct for it provides for a motion to suppress only when there has been a search and seizure. (See *People* v. *Superior Court (Smith)* (1969) 70 Cal.2d 123, 128 [74 Cal.Rptr. 294, 449 P.2d 230].) More recently in *People* v. *Gale* (1973) 9 Cal.3d 788 [108 Cal.Rptr. 852, 511 P.2d 1204], we described a motion under section 1538.5 as one "in the nature of a proceeding in rem against the evidence itself" which is directed "to the legality of specific items of evidence obtained by a search and seizure." (*Id.,* at p. 793.)

Several appellate court decisions have applied this general rule in situations similar to the one at hand. For example, in *People* v. *Superior Court (Redd)* (1969) 275 Cal.App.2d 49 [79 Cal.Rptr. 704], the court distinguished between admissions or confessions which are the products of unlawful search and seizure and those which are not, reasoning that only if the admissions are unlawful "fruits" of an otherwise invalid search may they then be suppressed by means of a section 1538.5 motion. (See *People* v. *Superior Court (Redd), supra,* at pp. 50-52.) Similarly, evidence seized as a result of an unlawfully obtained admission or confession may be suppressed pursuant to a section 1538.5 motion. (See

*People* v. *Superior Court (Mahle)* (1970) 3 Cal.App.3d 476, 484 [83 Cal.Rptr. 771].) In both cases it is the unlawful seizure of tangible evidence, not the admission or confession, which permits a defendant to invoke the procedures authorized by section 1538.5. Thus, that statute can be properly employed only to shield a defendant from Fourth Amendment violations; it has no part in protecting against Fifth Amendment infringements such as the one at hand.

Notwithstanding this limitation on the availability of section 1538.5, a defendant is not without means to seek pretrial review of alleged *Miranda* violations. Courts of this state have long recognized the existence of a common law motion to suppress illegally obtained statements. (See *People* v. *Hill* (1974) 12 Cal.3d 731, 765 [117 Cal.Rptr. 393, 528 P.2d 1]; *Griffin* v. *Superior Court* (1972) 26 Cal.App.3d 672, 696 [103 Cal.Rptr. 379]; *Saidi-Tabatabai* v. *Superior Court* (1967) 253 Cal.App.2d 257, 266 [61 Cal.Rptr. 510].) However, this common law motion differs from a section 1538.5 motion in its effect in subsequent proceedings. Unlike the statutory motion to suppress, a ruling on the common law motion is not reviewable pretrial. (*People* v. *Beasley* (1967) 250 Cal.App.2d 71, 77 [58 Cal.Rptr. 485].) Furthermore, it has been held in reference to common law suppression motions that "any ruling on the admissibility of an admission or confession made at such a motion is not binding on the court if the People again offer the evidence at the trial." (*Saidi-Tabatabai* v. *Superior Court, supra,* at p. 266; *People* v. *Beasley, supra,* at p. 77.)

In amplification of the People's assertion that the trial court exceeded its jurisdiction in amending the section 1538.5 motion, the contention is made that while at a common law suppression hearing such expansion may have been permissible, the language of section 1538.5 specifies that the "defendant" must make the motion, thus denying to the *court* the power to effect the amendment. Moreover, they argue that enlarging the target of the section 1538.5 motion after the hearing deprived the prosecution of the opportunity to present evidence which might have shown that the evidence seized was not derived from the confession.

We conclude that the court's amendment was proper under the circumstances. The defense concurred in the court's action, and the discussions between counsel and the bench at the hearing on the motion clearly indicate that the suppression motion was intended to apply to all the evidence. Defendants correctly point out that the assistant district attorney specifically stated that he was not claiming surprise at the

inclusion of the physical evidence, and the trial court indicated that it understood the original motion to include the physical evidence as well as the confessions. Of equal importance is the fact that the People have made no showing that they possessed any additional evidence indicating that the source of the physical evidence was other than the confession. The record discloses that the People have not been prejudiced by the trial court's action in this regard.

The physical evidence towards which the amended motion was directed was undeniably within the proper scope of section 1538.5. Since admissibility of the evidence depended upon whether or not a *Miranda* violation had occurred, a ruling on the *Miranda* issue necessarily became part of the section 1538.5 hearing. While it is true that normally trial court rulings on admissibility of confessions are not reviewable pretrial and are not binding if the People offer the confessions in evidence at trial (see *Saidi-Tabatabai* v. *Superior Court, supra,* 253 Cal.App.2d 257 at p. 266; *People* v. *Beasley, supra,* 250 Cal.App.2d 71 at pp. 76-77), the particular circumstances presented by the matter at bench lead to a different result. Our review of the admissibility of the physical evidence, which we undertake in accord with the provisions of section 1538.5, necessarily requires that we make a determination as to whether or not the trial court was correct in holding that a *Miranda* violation has occurred. Our ruling on that issue then becomes the law of the case and must be adhered to by the lower courts in future proceedings in this action. (See *People* v. *Shuey* (1975) 13 Cal.3d 835, 841-842 [120 Cal.Rptr. 83, 533 P.2d 211].)

In connection with the substantive issues presented by the instant petition, we conclude that the defendants did invoke their *Miranda* rights, and that the confessions procured during the subsequent interrogation were improperly obtained and thus inadmissible.

Defendant Voelpel's question, "Do you think we need an attorney?" (or alternatively his statement, "I guess we need a lawyer") was a direct result of the interrogation. The record discloses that the query interrupted the interrogation at a point when defendants' choice seemed all but limited to confession or silence. Moreover, defendants' subsequent specific request that the deputies recommend an attorney indicates both their continuing concern and their specific and pointed desire to consult counsel. We think the record discloses sufficient invocation of their right to remain silent. The *Miranda* mandate on the point is broad. After reciting the procedural safeguards, the high court said "The defendant

may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly, and intelligently. If, however, he indicates *in any manner and at any stage* of the process that he wishes to consult with an attorney before speaking there can be no questioning . . . . The mere fact that he may have answered some questions or volunteered some statements on his own does not deprive him of the right to refrain from answering any further inquiries until he has consulted with an attorney and thereafter consents to be questioned." (*Miranda* v. *Arizona, supra,* 384 U.S. 436 at pp. 444-445 [16 L.Ed.2d at p. 707], italics added.)

We have previously considered the meaning and effect of the phrase, "in any manner," in the *Miranda* holding. We have observed, for example, that a suspect need not make an express statement that he wishes to invoke his Fifth Amendment privilege: "no particular form of words or conduct is necessary." (*People* v. *Randall* (1970) 1 Cal.3d 948, 955 [83 Cal.Rptr. 658, 464 P.2d 114].) Furthermore, "to demand that it [the privilege] be invoked with unmistakable clarity (resolving any ambiguity against the defendant) would subvert *Miranda's* prophylactic intent." *(Id.)* In the instant case, Voelpel's question concerning the need for counsel, and the deputy's affirmative answer, or alternatively Voelpel's statement that "I guess we need a lawyer" constitutes in our view ample evidence that the defendants had invoked their Fifth Amendment rights. While Officer Strong asserted that he understood the question as demonstrating concern about the need for counsel *in the future,* the record discloses the interest was more immediate. As previously noted, the discussion regarding an attorney interrupted the interrogation at a critical juncture and included a request that the deputies recommend a lawyer at the time the request was made.

We find no significance in the fact that *both* defendants rely upon Voelpel's statements to the officers as constituting an invocation of their Fifth Amendment rights under *Miranda.* It is apparent that they were interrogated jointly and that the officers' questions regarding their desire to speak with or to consult an attorney were addressed to both. In the absence of evidence to the contrary we can only presume, given the setting, that Voelpel was speaking for both, and that his words were intended to serve as an assertion of Zolnay's rights as well as his own.

Our determination that the defendants' question constituted a valid invocation of their Fifth Amendment privileges does not end our inquiry. ■ A suspect who has asserted his rights and prevented further lawful interrogation nonetheless retains the option, thereafter,

voluntarily to initiate a confession. (See *People* v. *Fioritto* (1968) 68 Cal.2d 714, 719 [68 Cal.Rptr. 817, 441 P.2d 625].) ██ The People argue that even if Voelpel's question is deemed an implicit exercise of Fifth Amendment rights, the subsequent confessions should be viewed as independent and volunteered.

This assertion too is unsupported by the facts. Zolnay's confession was not spontaneous. It was offered after the deputies had left the defendants for five to ten minutes with the message that defendants could make the officers' jobs "easy" or "tough." Furthermore, the deputies asked, upon returning to the room, whether the defendants had made any decisions. In *People* v. *Fioritto, supra,* 68 Cal.2d 714 at page 720, we emphasized that "[t]he form of the renewed queries, however subtle or gentle, cannot be considered in determining whether there has been a violation of the stern principles prescribed by the Supreme Court in *Miranda.*" In the present case, both the deputies' assertion that defendants could make their jobs easy or tough, and their question whether defendants had reached a decision, demonstrate that defendants' confessions were elicited by police questioning after defendants had asserted their *Miranda* rights. In combination, the police conduct demonstrates a *Miranda* violation which invalidates the confessions.

The alternative writ of mandate is discharged and the petition for a peremptory writ is denied.

Wright, C. J., McComb, J., Tobriner, J., Mosk, J., Sullivan, J., and Clark, J., concurred.

Petitioner's application for a rehearing was denied January 14, 1976.