*4
 
 Opinion
 

 SMITH, J.
 

 Raymond Luden Reynaud, M.D., a psychiatrist enrolled as a provider of publicly funded health services under California’s Medi-Cal statute (Welf. & Inst. Code, § 14000 et seq.), is accused by information of grand theft (Pen. Code, § 487, subd. 1) and of 10 counts of presenting false Medi-Cal claims (Welf. & Inst. Code, § 14107). The evidence introduced against him at preliminary examination included 10 of Reynaud’s claims for services to named patients together with related cancelled checks, explanations of benefits, and computer compilations, and admissions cards for the patients at the care facilities in which the patients were housed. In the superior court Reynaud moved under Penal Code section 1538.5 to suppress these records as evidence. His motion was denied and he seeks review of the denial by petition for a writ of mandate. We issued the alternative writ. At our request the parties have submitted further briefing on issues germane to the propriety of writ review, We conclude that insofar as predicated on search and seizure grounds Reynaud’s suppression motion was properly denied. We further conclude that Reynaud has not established that this is a proper case for writ review, at this stage, of his separately argued contentions that use of the records in evidence would violate both his patients’ constitutional rights of privacy (Cal. Const., art. I, § 1) and their statutory psychotherapist-patient privileges (Evid. Code, § 1014.) Accordingly, we deny the peremptory writ and discharge the alternative writ. Because the privacy and privilege issues are likely to arise in further trial proceedings and have been argued at some length by the parties, we also briefly state our views on the merits of these issues. (Cf.
 
 Vasquez
 
 v.
 
 Superior Court
 
 (1971) 4 Cal.3d 800, 821, fn. 18 [94 Cal.Rptr. 796, 484 P.2d 964, 53 A.L.R.3d 513].)
 

 Reynaud had filed claims with Medi-Cal for extensive psychiatric services to patients who qualified for Medi-Cal assistance. The patients were developmentally disabled persons who were housed in privately owned care facilities in the San Jose area under the general supervision of the California Department of Developmental Services. Reynaud filed his claims with a private corporation, Blue Shield, which at the relevant time was a claims processing agent for the state under the authority of the Medi-Cal statute. In accordance with the statute and administrative regulations (Cal. Admin. Code, tit. 22, § 50000 et seq.) each claim disclosed the patient’s name, the type of medical services for which the claim was made, dates of service, relevant diagnosis, and certain other information. Checks (with attached explanations of benefits) were sent to Reynaud by Blue Shield in payment (ultimately from state funds) of these claims; and each claim and its disposition were recorded on a computer compilation referred to as a “UM-150.”
 

 In June 1979, an investigator in the California Attorney General’s Medi-Cal Fraud Unit received from a psychiatric social worker in the Department of
 
 *5
 
 Developmental Services a complaint that Reynaud had received a Medi-Cal “sticker” (evidence of a patient’s eligibility for Medi-Cal) for a patient who was not present at the group session for which Reynaud was collecting stickers. An investigation was initiated in the course of which the Fraud Unit investigators obtained from Blue Shield, by informal request under the terms of the state’s contract with Blue Shield and without patient consents or any kind of court order or process, copies of 10 of Reynaud’s claims together with related checks, explanations of benefits, and UM-150s. The investigators also inspected patient indices in the possession of the Department of Developmental Services, primarily to help synthesize other information they had received. On the basis of these materials and extensive additional investigation including surveillance of Reynaud over a long period, the state brought felony charges of theft and presenting false Medi-Cal claims against Reynaud.
 

 In the course of the lengthy preliminary examination of these charges, a manager of one of the care facilities, at the request of a Fraud Unit investigator but without subpoena or warrant, brought with her to the hearing several patient “admission cards” each of which identified a patient and gave his or her birth-date, social security number, telephone contact, next of kin, doctor, psychiatrist, dentist, date of admission, burial plan, and other information.
 

 These cards, and the materials retrieved from Blue Shield, were admitted in evidence over objection at the preliminary examination. Reynaud raised a privacy objection to the cards but objected to the Blue Shield records only on relevance and foundational grounds. Reynaud was held to answer.
 

 Reynaud moved in the superior court to suppress “all evidence seized and observations made as a result of: (1) unlawful surveillances; and (2) inspection and seizure of records.” As developed at the subsequent hearings, his theory was that the surveillances had been rendered unlawful by the asserted impropriety of the antecedent “seizures” of records. In the course of the suppression proceedings Reynaud apparently narrowed his motion to address only the “seizures” of the Blue Shield records, the information on the Department of Developmental Services cards, and the index cards from the care facilities. The motion was denied.
 

 In this court Reynaud focuses primarily on the Blue Shield records and does not renew his contentions with respect to the Department of Developmental Services cards.
 

 Reynaud’s suppression motion was expressly predicated on Penal Code section 1538.5, which in terms contemplates that a defendant may seek additional pretrial review by means of an extraordinary writ of mandate or prohibition. (Pen. Code, § 1538.5, subd. (i); cf.
 
 Nerell
 
 v.
 
 Superior Court
 
 (1971) 20 Cal.
 
 *6
 
 App.3d 593, 596-598 [97 Cal.Rptr. 702].) Section 1538.5 generally applies “only when there has been search and seizure” and “only to shield a defendant from Fourth Amendment violations . . . .”
 
 {People
 
 v.
 
 Superior Court (Zolnay)
 
 (1975) 15 Cal.3d 729, 733-734 [125 Cal.Rptr. 798, 542 P.2d 1390].)
 

 Reynaud maintains that the investigators’ activities with respect to the records was a
 
 search,
 
 and that by obtaining copies they
 
 seized
 
 the records. We disagree. “ [I]n determining whether an illegal search has occurred under the provisions of our Constitution, the appropriate test is whether a person has exhibited a reasonable expectation of privacy and, if so, whether that expectation has been violated by unreasonable governmental intrusion.”
 
 (Burrows
 
 v.
 
 Superior Court
 
 (1974) 13 Cal.3d 238, 242-243 [118 Cal.Rptr. 166, 529 P.2d 590], citing
 
 People
 
 v.
 
 Krivda
 
 (1971) 5 Cal.3d 357, 364 [96 Cal.Rptr. 62, 486 P.2d 1262],
 
 reiterated
 
 (1973) 8 Cal.3d 623, 624 [105 Cal.Rptr. 521, 504 P.2d 457].) With respect to the records provided to the Fraud Unit investigators by Blue Shield, it is clear that the types of information furnished by Reynaud concerning his patients, in support of his claims, were required by law for the purpose of verifying the propriety of the claims and were furnished to Blue Shield as the duly authorized agent of the state. In essence, the information was made available to the state, for wholly legitimate purposes, when the claims were first filed. Any expectation Reynaud might have had, or which might hypothetically be attributed to his patients, that the state would not examine information furnished to it to verify claims, for exactly that narrow purpose could not conceivably be justified (cf.
 
 In re Deborah C.
 
 (1981) 30 Cal.3d 125, 135 [177 Cal.Rptr. 852, 635 P.2d 446]) and in no sense could be deemed reasonable. Nor, by the same token, could the Fraud Unit’s action in seeking and obtaining the records from the state’s agent for use in the state’s investigation be deemed an
 
 unreasonable
 
 governmental intrusion. There simply was no search for or seizure of the Blue Shield records in any constitutionally cognizable sense.
 

 We reach a similar conclusion with respect to the care facility admission cards. These cards were voluntarily produced by a witness in response to a request unaccompanied by any apparent form of state compulsion. So far as the record reflects, the witness brought the cards with her to court on the day she testified and turned them over to the prosecutor who offered them in evidence during the witness’s testimony. Reynaud was given an immediate opportunity to obtain judicial consideration of any objection he might have had. He did object albeit not on search and seizure grounds, and the objections he made were overruled. By no attenuation can these circumstances be deemed an unlawful search and seizure.
 

 The general rule that section 1538.5 applies only to searches and seizures has been extended in particular cases to situations in which, although there is no ap
 
 *7
 
 parent “search,” there has been a “seizure” predicated on some form of illegal state action other than a search. (Cf.
 
 People
 
 v.
 
 Superior Court (Zolnay), supra,
 
 15 Cal.3d 729, 733-734.) The common thread in such cases is “the unlawful seizure of tangible evidence . . . .”
 
 {Id.
 
 at p. 734.) Reynaud asserts that his privacy and privilege contentions were properly raised in the section 1538.5 proceedings because in each instance the illegality he perceives gave rise to “unlawful seizure” of the records in question. However, in our view neither state inspection and copying of records already legitimately in its agent’s possession nor state use in court of records voluntarily produced by a witness amounted to a seizure. “[S]ection 1538.5 does not provide an omnibus procedure for the pretrial determination of rulings on evidentiary questions generally”
 
 (People
 
 v.
 
 Rawlings
 
 (1974) 42 Cal.App.3d 952, 956 [117 Cal.Rptr. 651]) and thus cannot be used as a route to writ review of evidentiary issues which do not involve the Fourth Amendment. (Cf.
 
 People
 
 v.
 
 Superior Court (Zolnay), supra,
 
 15 Cal.3d 729, 734.) In our view neither Reynaud’s distinct right-of-privacy contention nor the psychotherapist-patient privilege is subject to writ review at this stage of the proceedings.
 

 For these reasons we deny the writ. Nevertheless we briefly consider the merits of Reynaud’s privacy and privilege arguments.
 

 I.
 
 Privacy
 

 Reynaud contends that the Fraud Unit improperly infringed his patients’ inalienable constitutional right of privacy under article I, section 1, of the California Constitution. He argues that the privacy clause “contemplates notice and an opportunity for an adversary hearing at which the opposing interests can be weighed and any compell[ed] disclosure can be narrowly limited” and that for want of such a hearing and a properly drawn subpoena the Fraud Unit investigators obtained the records—in this instance apparently referring exclusively to the Blue Shield records—in violation of the constitutional privacy provision.
 

 We have recognized a nexus between the confidentiality of information derived from psychotherapist-patient communications and the constitutional right of privacy.
 
 {Smith
 
 v.
 
 Superior Court
 
 (1981) 118 Cal.App.3d 136, 140 [173 Cal.Rptr. 145]; cf. also
 
 In re Lifschutz
 
 (1970) 2 Cal.3d 415, 431-432 [85 Cal.Rptr. 829, 467 P.2d 557, 44 A.L.R.3d 1];
 
 Board of Medical Quality Assurance
 
 v.
 
 Gherardini
 
 (1979) 93 Cal.App.3d 669, 676-679 [156 Cal.Rptr. 55] [physician-patient privilege].) (5) While the right of privacy is not absolute, it is well established that the propriety of any governmental intrusion upon the right will depend upon a showing that the intrusion was justified by a state need which was compelling not only in the abstract but also when weighed against the privacy rights of the individual and that the scope of the intrusion
 
 *8
 
 was no greater than could be justified by the state’s need in all the circumstances. (Cf.
 
 White
 
 v.
 
 Davis
 
 (1975) 13 Cal.3d 757, 775 [120 Cal.Rptr. 94, 533 P.2d 222];
 
 Board of Trustees
 
 v.
 
 Superior Court
 
 (1981) 119 Cal.App.3d 516, 524-526 [174 Cal.Rptr. 160];
 
 Board of Medical Quality Assurance
 
 v.
 
 Gherardini, supra,
 
 93 Cal.App.3d at p. 680.) The crux of Reynaud’s contention is that the Fraud Unit was required to obtain a judicial determination of the propriety of the proposed intrusion at a noticed hearing before it inspected or copied tiie Blue Shield records.
 

 Generalized, Reynaud’s rule would require that whenever the state’s authority is to be invoked to obtain information in arguable derogation of an individual’s privacy rights, the privacy issues should be fully litigated, with notice to all interested parties, in advance. The undeniable significance of the concept of personal privacy lends philosophical appeal to such a rule, but the rule’s breadth and inflexibility would in many applications create practical problems disproportionate to its abstract desirability. The scope of the privacy clause is potentially enormous and the variety of circumstances in which it might be invoked is essentially infinite. To require a noticed preliminary judicial determination whenever privacy rights are arguably involved would severely, and in our view unnecessarily, restrict the state’s capacity to conduct legitimate inquiries. Administration of the privacy clause, like the right of privacy itself, should take adequate account of all competing interests in the circumstances of each case.
 

 In general, the state, or a private proponent who invokes the state’s authority by judicial process or otherwise, should (whenever individual privacy rights can reasonably be perceived to be involved) make a showing of predominate state need and sufficiently circumscribed means, in a form susceptible to judicial review, before disclosure is compelled whenever reasonably possible and as soon as reasonably possible in any event. The proponent should also obtain an advance judicial determination of the propriety of the inquiry whenever it is reasonable and practical to do so. The proponent should notify the individual of the proposed or accomplished incursion upon his privacy rights whenever and as soon as reasonably and practicably possible. The determination of what is reasonable and practical should be gauged by the circumstances of each case as it arises and should take into account not only the interests of the parties but also the availability and sufficiency of existing procedures.
 

 Thus, in civil litigation the Discovery Act already provides means by which notice must be given, and privacy issues may be fully litigated, before court process to compel discovery will issue. (Code Civ. Proc., § 2016 et seq.; cf.
 
 In re Lifschutz, supra,
 
 2 Cal.3d 415;
 
 Smith
 
 v.
 
 Superior Court, supra,
 
 118 Cal. App.3d 136.) In proceedings in which a state administrative agency is empowered to issue its own subpoenas it is enough that the state incorporate into
 
 *9
 
 the subpoena declaration a showing on the privacy issues sufficient to sustain the state’s position upon subsequent judicial review.
 
 {Board of Medical Quality Assurance
 
 v.
 
 Gherardini, supra,
 
 93 Cal.App.3d 669, 680-681.) In situations to which search warrant requirements apply, privacy issues are necessarily involved in the advance showing required to be made, in the magistrate’s decision to issue the warrant, and in the prompt and detailed subsequent judicial review already provided for by law. (Pen. Code, §§ 1523-1524.) Indeed, the Legislature has added to the search warrant provisions a procedure specially designed to protect individual privacy rights where warrants issue for documents particularly likely to contain information subject to those rights. (Pen. Code, § 1524, subd. (c); cf.
 
 Deukmejian v. Superior Court
 
 (1980) 103 Cal.App.3d 253, 258-261 [162 Cal.Rptr. 857].)
 

 In the areas of criminal and disciplinary investigation, it has not been the rule that a noticed hearing must be had before disclosure is compelled. The reason seems plain. The state’s legitimate interest in obtaining full and accurate information would be unduly compromised, in such situations, by affording direct or indirect advance notice to an inculpated custodian who might be motivated to destroy, conceal, or alter the evidence. These considerations, we take it, led the Legislature to make an exception to the special search warrant procedure referred to above in instances in which the custodian is “reasonably suspected of engaging or having engaged in criminal activity related to the documentary evidence . . . .” (Pen. Code, § 1524, subd. (c).)
 

 In the circumstances of this action no reasonable occasion for an advance showing concerning, or determination of, patients’ privacy rights arose. The Blue Shield records were essentially internal to the state and were based on information disclosed to the state for legitimate purposes. It would have been unreasonable to have required the state to make a formal showing or to seek formal adjudication, or even to perceive a genuine privacy issue, before reviewing its own records for the very purposes for which those records were compiled. We note with approval another court’s conclusion that this kind of essentially internal agency investigation of possible fraud on the public “is not the stuff out of which a cause of action for violation of right of privacy grows.”
 
 {Haskins
 
 v.
 
 San Diego County Dept. of Public Welfare
 
 (1980) 100 Cal.App.3d 961, 971 [161 Cal.Rptr. 385].) The admissions cards were brought to court, and first disclosed, in response to informal request. The pending court proceedings afforded ample opportunity for adjudication.
 

 II.
 
 Privilege
 

 If properly invoked in a proceeding in which testimony can be compelled (cf. Evid. Code, § 901) the psychotherapist-patient privilege applies to any “confidential communication between patient and psychotherapist . . . .” (Evid.
 
 *10
 
 Code, § 1014.) “Confidential communication” includes a “diagnosis made and the advice given by the psychotherapist” (Evid. Code, § 1012), and we have held that even the identity of the patient may (because of its tendency to disclose, by association with the psychotherapist, the nature of the patient’s ailment) come within the privilege.
 
 {Smith
 
 v.
 
 Superior Court, supra,
 
 118 Cal.App.3d 136, 140-142.) As described in the record the Blue Shield documents reflect identification and diagnostic conclusions necessarily based on presumably confidential (cf. Evid. Code, § 917) psychotherapist-patient communications and, thus, would be subject to the privilege unless application of the privilege has been waived or is otherwise barred. The holder of the privilege is the patient (or his guardian, conservator, or personal representative), and only he (or they) may waive it. (Evid. Code, §§ 912, 1013.) So far as the record shows no patient has either asserted or waived the privilege in this action.
 

 Reynaud did not assert the privilege at the preliminary examination, where the Blue Shield documents were received in evidence over other objections. He raised the privilege in the superior court, and raises it again in this court, as a predicate for his contention that the Blue Shield documents were improperly “seized, ” but of course at the time the Fraud Unit obtained the documents there was no pending “proceeding” in which the evidentiary privilege could properly have been invoked. The privilege would not, strictly speaking, have applied to that preliminary investigation. We assume, however, that Reynaud will again seek to invoke the privilege at some stage of the trial court proceedings.
 

 Reynaud asserts that he invokes the privilege because he is required to do so by Evidence Code section 1015. But in our view the circumstances that Reynaud would invoke the privilege in criminal proceedings pending against him and that the privilege would have the effect of excluding evidence which would tend to incriminate him, not only release him from his statutory duty but bar him from asserting the privilege. Absent his patients, only Reynaud could say whether the Blue Shield documents (based on information he had communicated to Blue Shield) embodied the substance of confidential communications between his patients and himself. Indeed it is the state’s position, necessarily, that at least some of the information Reynaud communicated to Blue Shield was false and had originated with Reynaud himself for the purpose of defrauding Medi-Cal. It would be wholly untenable to require that the trial court rely on Reynaud’s statement of the pertinent facts in these circumstances.
 

 A determination that Reynaud should not be authorized to claim the privilege would evoke the statutory requirement that “[t]he presiding officer, on his own motion or on the motion of any party, shall exclude information that is subject to a claim of privilege under [the privilege statutes] if: (1) the person from whom the information is sought is not a person authorized to claim the
 
 *11
 
 privilege; and (2) there is no party to the proceeding who is a person authorized to claim the privilege.” (Evid. Code, § 916, subd. (a).) Although a broad suggestion that circumstances to which this provision would apply vest the court with
 
 discretion
 
 to “protect an absentee holder of the privilege who has not waived it”
 
 (Rudnick
 
 v.
 
 Superior Court
 
 (1974) 11 Cal.3d 924, 932-933 [114 Cal.Rptr. 603, 523 P.2d 643]) appears to conflict with the mandatory language of the provision and has been cogently criticized (Note (1975) 27 Hastings L.J. 99, 120-121) and subsequently disregarded (cf., e.g.,
 
 Lemelle
 
 v.
 
 Superior Court
 
 (1978) 77 Cal.App.3d 148, 158 [143 Cal.Rptr. 450]), it remains proper for the court to make a preliminary determination whether the information in issue “is subject to a claim of privilege.” It is our view that in the circumstances of record, a trial court could properly conclude that a Medi-Cal patient could be deemed to know that for the limited purpose of obtaining public payment for his treatment certain narrowly circumscribed information concerning him must be communicated to the state and be and remain subject to state audit, that to that extent and for that purpose the patient did not intend his communications to be confidential in the sense requisite to the privilege, and that, therefore, the Blue Shield documents would not in the circumstances be subject to the psychiatrist-patient privilege.
 

 For further proceedings in this action a more practical alternative suggests itself: Surely the state should be able to ascertain from the patients, or their personal representatives, whether they would be willing to waive the privilege for the narrow purposes of this action and (if so) to obtain such waivers in appropriate form.
 

 Because we conclude that the motion to suppress evidence was properly denied, we find it unnecessary at this stage to consider whether or to what extent “the Victim’s Bill of Rights” (adopted by our electorate as Proposition 8 on the June 1982 ballot) would be applicable to the facts before us.
 

 The peremptory writ is denied. The alternative writ is discharged.
 

 Rouse, Acting P. J., and Miller, J., concurred.
 

 A petition for a rehearing was denied January 6, 1983, and petitioner’s application for a hearing by the Supreme Court was denied February 10, 1983. Grodin, J., did not participate therein.