John W. Jordan, the appellant, was convicted of sexual abuse in the first degree, a violation of Ala. Code 1975, §13A-6-66(a)(3). He was sentenced to five years' imprisonment, was fined $1,000, and was ordered to pay court costs and a victims' compensation assessment of $1,000. On this appeal, he raises four issues.
 I
After the jury was empaneled and sworn and the trial judge had given his opening instructions to the jury, the appellant made a motion challenging the prosecutor's use of peremptory strikes to remove black persons from the jury. This issue has not been preserved for appellate review. To be timely, "aBatson [v. Kentucky, 476 U.S. 79,106 S.Ct. 1712, 90 L.Ed.2d 69 (1986)] objection, in a case in which the death penalty has not been imposed, must be made prior to the jury's being sworn. Bell v. State,535 So.2d 210, 212 (Ala. 1988)." Ross v. State, 581 So.2d 495,496 (Ala. 1991) (emphasis added by the court in Ross).
 II
After the direct examination of the victim, defense counsel asked the trial court to order the State to provide him with statements made by the victim to Baldwin County mental health counselor Mary Burns. The prosecutor responded that victims of sexual abuse, sexual assault, and other crimes are referred to Ms. Burns for counselling, but that Ms. Burns is not associated with a law enforcement agency, and he argued that her confidential communications with the victim in this case were absolutely shielded from disclosure by virtue of Ala. Code 1975, § 15-23-42.
Section 15-23-42, which is part of an act entitled "The Victim Counselor Confidentiality Act of 1987," provides, in pertinent part, that
 "[a] victim, [or] a victim counselor without the consent of the victim, . . . cannot be compelled to give testimony or to produce records concerning confidential communications for any purpose in any criminal proceeding."
Section 15-23-43 provides:
 "(a) A victim does not waive the protections afforded by this article by testifying in court about the crime.
 "(1) However, if the victim partially discloses the contents of a confidential communication in the course of testifying, then either party may request the court to rule that justice requires the protections of this section be waived, to the extent they apply to that portion of the communication.
 "(2) Any waiver shall apply only to the extent necessary to require any witness to respond to counsel's questions concerning the confidential communication[s] that are relevant to the facts and circumstances of the case.
 "(b) A victim counselor cannot waive the protections afforded to a victim under this section. . . ."
Section 15-23-45 provides:
 "This article shall not be construed to relieve victim counselors of any duty to report suspected child abuse or neglect. . . ."
Defense counsel argued that the privilege for confidential communications under § 15-23-45 had been waived when Ms. Burns released her file to the Department of Human Resources (DHR) for "investigati[on] of this case." R. 114. He claimed that once Ms. Burns turned over her information to DHR, the victim counselor privilege of § 15-23-45 was subordinated to the requirements of § 26-14-8(b)(4). Section 26-14-8
provides, in pertinent part, as follows: *Page 335 
 "Establishment of central registry; confidentiality of records and reports
 "(a) The state department of human resources shall establish a statewide central registry for reports of child abuse and neglect made pursuant to this chapter. The central registry shall contain, but shall not be limited to:
"(1) All information in the written report;
 "(2) Record of the final disposition of the report, including services offered and services accepted;
 "(3) The names and identifying data, dates and circumstances of any persons requesting and receiving information from the registry;
"(4) The plan for rehabilitative treatment; and
 "(5) Any other information which might be helpful in furthering the purposes of this chapter.
 "(b) The state department of human resources shall establish and enforce reasonable rules and regulations governing the custody, use and preservation of the reports and records of child abuse and neglect. The use of such reports and records shall be limited to the purposes for which they are furnished and by the provisions of law under which they may be furnished. The reports and records of child abuse and neglect shall be confidential, and shall not be used or disclosed for any purposes other than:
. . . .
 "(4) For use by a court where it finds that such information is necessary for the determination of an issue before the court;
". . . .
 "(c) Any violation of this provision of confidentiality shall be a misdemeanor and punishable accordingly."
The assistant district attorney stated that the DHR caseworker who had the responsibility for this case had "never even seen the [counselor's] records. They may be over there in [DHR's] custody, but they [were] not used as an investigatory tool by the department or by any other law enforcement agency." R. 114.
Defense counsel informed the court that it was his understanding that "when [a] child is referred to counselling, and particularly when DHR pays for it, that DHR requires the family to sign releases releasing [the counselor's] information . . . back to DHR." R. 115. The prosecutor did not dispute DHR's possession of the records based on a release. Instead, he maintained that § 15-23-42, as well as § 26-14-8(c), guaranteed the confidentiality of counselor records in the possession of DHR.
The trial court ruled that although §§ 15-23-42 and26-14-8(b)(4) appeared to be in conflict, the former was controlling, and victim counselor communications were "confidential and may not be used in this proceeding." R. 120.
On appeal, the appellant argues that the trial court's refusal to release the victim-counselor information to him or to conduct an in camera review of the information for prior inconsistent statements by the victim violated his right to confront and cross-examine the witnesses against him. Brief of the Appellant at 15. At trial, however, the appellant did not claim that the non-disclosure of the information denied him the right of confrontation and cross-examination and did not request the trial court to conduct an in camera review of the material he sought. He did not argue that the privileged material might contain prior inconsistent statements by the victim or other exculpatory information. In fact, the record discloses no statement of the grounds upon which the appellant claimed to be entitled to the privileged information other than defense counsel's argument that the privilege had been waived by the alleged release of the information to DHR.
While it is possible that grounds may have been stated in an off-the-record conference with the trial judge during a recess following the victim's direct examination, see R. 112, we are bound by what appears in the record before us. The appellant " 'bears the burden of bringing the record before an appellate court. He and his counsel have the duty of checking the record *Page 336 
before submitting the appeal. It is their duty to file a corrected record.' " Welch v. State, 455 So.2d 299,300 (Ala.Cr.App. 1984) (quoting Harris v. State,420 So.2d 812, 816 (Ala.Cr.App. 1982)).
We need not determine whether the § 15-23-42 privilege violated the appellant's rights to confrontation and cross-examination because that issue was not presented to the trial court. See Thornton v. State, 527 So.2d 143, 144
(Ala.Cr.App. 1987), cert. quashed, 527 So.2d 146 (Ala. 1988). See generally Annot., Constitutionality, With Respect toAccused's Rights to Information or Confrontation, of StatuteAccording Confidentiality to Sex Crime Victim's Communicationsto Sexual Counselor, 43 A.L.R.4th 395 (1986); Comment,Rape Victim-Rape Crisis Counselor Communications: A NewTestimonial Privilege, 86 Dick.L.Rev. 539 (1982); Note, 55 Temp.L.Q. 1124 (1982). Compare Pennsylvania v.Ritchie, 480 U.S. 39, 57, 107 S.Ct. 989, 1001,94 L.Ed.2d 40 (1987), where the court observed: "This is not a case where a state statute grants [the child protective agency] the absolute authority to shield its files from all eyes. Cf. 42 Pa.Cons.Stat. § 5945.1(b) (1982) (unqualified statutory privilege for communications between sexual assault counselors and victims)." In a footnote, the court stated: "We express no opinion on whether the result in this case would have been different if the statute had protected the . . . files from disclosure to anyone, including Jaw-enforcement and judicial personnel." Ritchie, 480 U.S. at 57 n. 14,107 S.Ct. at 1001 n. 14. (Emphasis in original.)
Addressing the only argument made below for disclosure of the information, we conclude that the statutory privilege for victim counselor confidential communications was not
waived by the victim's alleged release of the counselor's report to DHR.
In order to determine whether a testimonial privilege has been waived by extra-judicial conduct, it is necessary to examine two factors: (1) the "implied intention" of the holder of the privilege and (2) the element of "fairness and consistency." 8 Wigmore, Evidence § 2327 at 636 (McNaughton rev. 1961). Although the holder may subjectively intend not to abandon the privilege, if his conduct, viewed objectively, manifests a purpose not to insist on the privilege, then the privilege should fairly be deemed to have been waived.
 "A privileged person would seldom be found to waive if his [subjective] intention not to abandon could alone control the situation. There is always also the objective consideration that when his conduct touches a certain point of disclosure, fairness requires that his privilege shall cease whether he [subjectively] intended that result or not. He cannot be allowed, after disclosing as much as he pleases, to withhold the remainder. He may elect to withhold or to disclose, but after a certain point his election must remain final."
Id.
In this case, only the victim could waive the privilege for victim counselor confidential communications. See §15-23-43(b) ("A victim counselor cannot waive the protections afforded to a victim under this section"). Compare Arnoldv. State, 353 So.2d 524, 526 (Ala. 1977) (the waiver of the marital privilege belongs to the communicating spouse);Swain v. Terry, 454 So.2d 948, 953-54 (Ala. 1984) (the waiver of the attorney-client privilege belongs solely to the client). We do not know whether the victim in fact executed a release or, if she did, what the terms of the release were. Assuming, however, that the victim signed a release in favor of DHR of all confidential communications made to Ms. Burns, that action did not constitute a waiver of the § 15-23-42
privilege because neither the victim nor the other two parties affected by the release did, by that action, objectively manifest an intention to abandon the confidentiality of the victim's communications to Ms. Burns.
DHR could not have envisioned that the release would abrogate the confidentiality of victim counselor communications since the "primary goal" of § 26-14-8, which establishes a central registry at DHR for *Page 337 
reporting child abuse, is "to provide for confidentiality."Cure v. State, 600 So.2d 415, 418 (Ala.Cr.App.), cert. denied, 600 So.2d 421 (Ala. 1992). See also § 26-14-8(c) ("Any violation of this provision of confidentiality shall be a misdemeanor and punishable accordingly").
The victim could not have contemplated that releasing her counselor's report to DHR (the very agency which referred her for counselling) would have allowed disclosure of what occurred during the counselling sessions. The counselor's records were submitted to DHR as a report of "services offered and services accepted" under § 26-14-8(a)(2), and DHR was statutorily bound to ensure the confidentiality of the report under §26-14-8(b), which provides that "[t]he use of such reports and records shall be limited to the purposes for which they are furnished." The apparent purpose for furnishing Ms. Burns's report to DHR was to document the counselling services provided to the victim and to monitor her treatment. These purposes would not have been served by abandoning the confidentiality under which the victim's communications were made to Ms. Burns. See Note, 55 Temp.L.Q. 1124, 1135 (1982) ("The reasons which support a rape counseling privilege are the rape victim's privacy interests and the public policy goals of rehabilitating rape victims, encouraging the reporting of rapes and monitoring the institutions with which rape victims must deal").
In Matter of Von Goyt, 461 So.2d 821 (Ala.Civ.App. 1984), the Alabama Court of Civil Appeals held that a release signed by a former mental patient allowing transfer of her records from one hospital to another did not constitute a voluntary waiver of the § 34-26-2 psychologist-patient privilege. The following observation made by Judge Bradley, writing for that court, can also be made in this case:
 "The release was provided for the stated purpose of 'treatment planning' and was not a public disclosure. The privilege extends to this exchange of information between the mental health facilities, because the disclosure was necessary for Miss Von Goyt's treatment. . . . We conclude, therefore, that the release signed by Miss Von Goyt did not constitute a voluntary waiver of her psychologist-patient privilege."
Von Goyt, 461 So.2d at 823. Compare Reynaud v.Superior Court, 138 Cal.App.3d 1, 11, 187 Cal.Rptr. 660,666 (1982) (Medi-Cal patient could be "deemed to know that for the limited purpose of obtaining public payment for his treatment certain narrowly-circumscribed information concerning him must be communicated to the state. . . [and] to that extent and for that purpose the patient did not intend his communications to be confidential in the sense requisite to the [psychiatrist-patient] privilege").
Ms. Burns could also not have considered that making her records available to DHR would result in the abrogation of the confidentiality privilege. She could hardly be deemed to have anticipated that the transmittal of her confidential records to the central registry of a supervising agency, whose files were themselves confidential, would abrogate the confidentiality of the records. Compare Usen v. Usen, 359 Mass. 453, 456,269 N.E.2d 442, 444 (1971) ("the patient did not lose her privilege to prevent disclosure of a communication merely because it was made part of a hospital record"); 8 Wigmore,Evidence § 2382(3) at 839 (McNaughton rev. 1961) ("The [physician-patient] privilege is universally agreed to include the physician's entries in medical records of a hospital"). Furthermore, DHR's "use of such reports and records [is] limited . . . by the provisions of law under which they may be furnished." The "Victim Counselor Confidentiality Act of 1987" was a "provision of law" under which Ms. Burns's records were made available to DHR. As the assignee of the victim's interest in asserting the privilege, DHR was bound to honor the confidentiality of those records. See 8 Wigmore,Evidence § 2328(2) at 639 (McNaughton rev. 1961 ("Where the client's interest has been assigned, it seems proper to say that the privilege is transferred to the assignee, for the purpose of waiver, so far as the communications affect *Page 338 
merely the realization of the transferred interest; but it remains with the client so far as they affect any . . . right remaining in him").
There is no basis for determining, in this case, that the testimonial privilege for confidential communications was waived by the disclosure of the communications to an agency that was itself bound to guarantee the confidentiality of the communications. Compare In re Pebsworth, 705 F.2d 261
(7th Cir. 1983) (patient's authorization of disclosure of physician records to medical insurers, whose records were not confidential, waived physician-patient privilege). We therefore hold that, on the only ground asserted at trial, the appellant was not entitled to the records of the victim's counselor.
 III
The appellant claims that the trial court erred by allowing the victim's physician to give her opinion that the irregularities in the child's hymen were the result of "digital penetration." During direct examination of Dr. Rhoda Burns, the following occurred:
 "Q. [By assistant district attorney]: Doctor Burns, you testified as to some irregularities or notches that you found in the child's hymen. Could you tell us what could have possibly caused those irregularities?
 "[DEFENSE COUNSEL]: And again, objection, speculation on the part of the witness.
"THE COURT: Overruled.
 "THE WITNESS: These findings are consistent with irritation. There's several things that could have caused this; however, with the child's history, I feel they were probably caused by digital penetration." R. 167.
The prosecutor's question to the witness was unobjectionable and the trial court properly overruled the appellant's objection to it. A physician is qualified to give his opinion regarding the cause of a physiological anomaly. See C. Gamble,McElroy's Alabama Evidence § 128.09 (4th ed. 1991). "Our holdings in [sexual abuse] cases have implicitly recognized that the average juror is not likely to be conversant with the physiological . . . symptoms of sexual abuse. . . .
 " 'The general rule is that "[t]he criterion for admission of expert testimony is that the witness, by study, practice, experience, or observation as to the particular subject, should have acquired a knowledge beyond that of ordinary witnesses." ' Bird v. State, [594 So.2d 676] (Ala.Cr.App. 1991) (quoting White v. State, 294 Ala. 265, 271, 314 So.2d 857, 862, cert. denied, 423 U.S. 951, 96 S.Ct. 373, 46 L.Ed.2d 288 (1975)). . . . [T]he trial court acted within its discretion in determining that the . . . testimony 'enlightened the jury in an area beyond the average lay person's knowledge and assisted it in arriving at the truth.' Lee v. State, 565 So.2d [1155] at 1156 [Ala.Cr.App. 1990]."
Inmon v. State, 585 So.2d 261, 267 (Ala.Cr.App. 1991).
The witness's answer, however, was partially unresponsive and subject to exclusion. However, defense counsel failed to object to the witness's answer, did not move to exclude it, and made no request for curative instructions. Therefore, any error in the admission of the answer was not preserved for review.Brown v. State, 481 So.2d 1191, 1194-95
(Ala.Cr.App. 1985).
Furthermore, we find that in light of the subsequent thorough cross-examination of Dr. Burns by defense counsel, the jury was fully apprised of the basis for Dr. Burns's conclusions and the fact that other experts might have disagreed with those conclusions. Thus the error, even if preserved, would not have been reversible. See Inmon v. State, 585 So.2d at 266 ("We simply do not believe that, when examined in the context of the entire case, this testimony, which only inferentially touched on the 'ultimate issue' was prejudicial to the defendant's substantial rights").
 IV
The ten year-old victim testified that the fifty year-old appellant "put his *Page 339 
hand in [her] underwear and rubbed [her] private." R. 105-06. This testimony alone was sufficient to establish a prima facie case of sexual abuse. Vinson v. State, 601 So.2d 196
(Ala.Cr.App. 1992).
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.