JOHNSTONE, Justice.
Defendants T.O., a minor, J.O., his father, and E.O., his mother, all petition for a writ of mandamus directing the trial judge, a Jefferson County Circuit Court judge, to vacate and to countermand his order requiring T.O.’s psychiatrist to submit to deposition by the plaintiffs and to produce T.O.’s psychiatric records pursuant to the plaintiffs’ third-party subpoena. The issue is whether the defendant mother or defendant minor waived the latter’s right to assert his psychotherapist-patient privilege. We issue the writ.
B.J. and J.J., as parents, guardians, and next friends of their son A.J., a minor, sued T.O., J.O., and E.O. Specifically, they sued T.O. for assault and sued J.O. and E.O. for negligent or wanton supervision and for negligent or wanton failure to warn. The plaintiffs alleged that defendant T.O., then thirteen years old, had sexually assaulted plaintiff A.J., then three years old, at defendants J.O. and E.O.’s house.
On June 8, 2001, defendant mother E.O. was deposed by the plaintiffs. Responding to questions asked by plaintiffs’ counsel, E.O. testified, in pertinent part:
“Q. What have you learned since that conversation that makes you think that there was?
“A. In [T.O.’s] treatment at [a mental health facility], [T.O.] realized that he had not — when he was reading some material, I guess describing sodomy, he realized that he had not actually put his penis inside [A. J.]
[[Image here]]
“Q. What was [T.O.] charged with? And not to get too legalistic, what did he *708 plead to or what happened with those charges?
“[Defendants’ attorney]: ... [A]ll of that is sealed, so I don’t know that it is discoverable. I will tell that as a result of the criminal proceedings he went to [a mental health facility].
“[Plaintiffs’ attorney]: I assume you’re telling her not to answer until we resolve the legalities of looking into that.
“[Defendants’ attorney]: Sure.
“[Plaintiffs’ attorney]: And I don’t even know how important it is.
“[Defendants’ attorney]: Well, and I don’t know that it is either. But since it’s sealed, I don’t feel comfortable telling her to talk about it.
“[Plaintiffs’ attorney]: I understand.
“Q. When did [T.O.] go to [the mental health facility]?
“A. It was around the first of September of the same year, '99.
“Q. Had he been at [the mental health facility] since then?
“A. Until December of 2000.
[[Image here]]
“Q. Did [T.O.] have a primary doctor there?
“A. He had a psychiatrist and a counselor.
“[J.O., the father]: I’m not sure what his exact title is.
“A. I don’t know his title. But he did have someone that was like a counselor-type role, but I think it was more than a counselor. I just cannot remember the exact time.
“Q. Do you remember his name or her name?
“A. Chuck Duer, D-U-E-R I believe. His psychiatrist is Shaquil Kahn, K-A-H-N.
“Q. What did either Dr. Kahn or Mr. Duer tell you about [T.O.’s] condition? Did they make a diagnosis? What is your understanding of his mental health?
“I assume it has gotten better from September 1 through December of 2000. But what is your understanding as what they diagnosed his mental health, for lack of a better phrase, when he first went to [the mental health facility]?
“A. I’m not sure I understand what you are asking.
“[Defendants’ attorney]: I don’t know that there was an actual diagnosis. That’s why I think she is having trouble.
“A. There was sexual misconduct.
“Q. Did they discuss with you why they believed that sexual misconduct happened or what [T.O.’s]—
“A. Yes.
“Q. That’s what I’m trying to get at.
“A. Okay.
“Q. Just tell me what they told you about that, please ma’am.
“A. Well, [T.O.] was sexually abused as a young child. And he — you know, I know more now about it than I did then.
“Q. Right. And what I’m asking you now is what they told you. I’m not asking you at this time what you knew then.
“A. Okay.
“Q. But today what you know and what they told you.
“A. Okay. That his prognosis is good. Now, you know, it’s good. It was inappropriate at the time, you know, his conduct at the time, that he has problems socially. There are some problems socially and with self-esteem and that he has never really faced what happened to him, come to grips with what happened] to him. He has no recollection of it. The test that they did prior to [his treatment at the mental health facility] was *709 ruled invalid, the psychiatric test that [J.J.] mentioned yesterday.
[[Image here]]
“Q. Did Kahn or Duer, or either one of them, express to you that the actions of [T.O.] was based primarily on him being sexually abused as a child, or were there other contributing causes.
“A. They felt like that was probably it. You know, they didn’t know for sure why [T.O.] would have done this, but they felt like his sexual abuse as a child was a contributing — significant contributing factor.” (Deposition of E.O., pp. 13-28.)
Thereafter, on motion by defendants J.O. and E.O., the trial court entered summary judgment against the plaintiffs on their claims against J.O. and E.O. The plaintiffs amended their complaint to allege that plaintiff A.J. was an invitee of defendants T.O., J.O., and E.O. and that T.O., J.O., and E.O. had negligently or wantonly failed to provide a safe environment for A. J.
The plaintiffs served T.O., J.O., and E.O. with a notice of intent to serve a subpoena on a nonparty, Dr. Shaquil Kahn, a psychiatrist at the mental health facility where T.O. was treated. Attached to the notice was a subpoena requiring Dr. Kahn to appear at a deposition and to produce “[a]ny and all documents, correspondence or other memorandum related in any way to the treatment of [T.O.], including but not limited to notes, invoices, prescription scripts, etc.” to the plaintiffs. T.O., J.O., and E.O. objected to the subpoena on the grounds that
“[t]he requested records are immune from discovery by virtue of the the [sic] psychotherapist-patient privilege. See Ex parte United Service Stations, Inc., 628 So.2d. 501 (Ala.1993); Ala.Code § 34-26-2 (1975); and Ala. R. Evid. 503. Furthermore, the Defendants do not and have not waived the privilege.”
The plaintiffs responded that T.O., J.O., and E.O. had waived T.O.’s psychotherapist-patient privilege when E.O. answered, without objection, questions in her deposition about what she had learned from Dr. Kahn about his findings and opinions about T.O. and his condition. Thereafter, the trial court entered an order stating, in pertinent part:
“After considering the written briefs and responses submitted by both parties, and oral argument at the February 28th 2003 hearing, this Court has determined that the Defendants have waived the right to assert the privilege as to [Dr.] Shaquil Kahn and [T.O.] The privilege was waived when [E.O.], [T.O.’s mother], answered questions regarding [T.O.’s] treatment at [the mental health facility] at her deposition regarding this case without sufficient objection from the [defendants’] attorney.
“The records and testimony of [Dr.] Shaquil Kahn, however, will be available only for in camera review by this Court, counsel, and their experts, and a protective order shall be entered by the Court governing the use of such records and testimony.”
The defendants filed motions to reconsider, and T.O. submitted a supporting brief. T.O. asserted, in pertinent part, that the requested records and deposition testimony are protected by the psychotherapist-patient privilege “afforded by Ala. R. Evid. Rule 503(c).” He relied, in pertinent part, on Ex parte United Service Stations, Inc., 628 So.2d 501 (Ala.1993), and Ex parte Pepper, 794 So.2d 340 (Ala.2001).
In their petitions to us, J.O., E.O., and T.O. contend, in pertinent part, that the trial court erred in holding that E.O.’s testimony had waived the psychotherapist-patient privilege afforded T.O. by *710 § 34-26-2, Ala.Code 1975, Rule 503, Ala. R. Evid., Ex parte United Service Stations, and Ex parte Pepper, against disclosures by Dr. Kahn about his professional relations with T.O.
“ ‘Mandamus is a drastic and extraordinary writ, to be issued only where there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.’ Ex parte Integon Corp., 672 So.2d 497, 499 (Ala.1995).... Our review is further limited to those facts that were before the trial court. Ex parte American Resources Ins. Co., 663 So.2d 932, 936 (Ala.1995).”
Ex parte National Sec. Ins. Co., 727 So.2d 788, 789 (Ala.1998).
“In Ex parte Ocwen Federal Bank, FSB, 872 So.2d 810 (Ala.2003), this Court announced that it would no longer review discovery orders pursuant to extraordinary writs. However, we did identify four circumstances in which a discovery order may be reviewed by a petition for a writ of mandamus. Such circumstances arise (a) when a privilege is disregarded, see Ex parte Miltope Corp., 823 So.2d 640, 644-45 (Ala.2001); (b) when a discovery order compels the production of patently irrelevant or du-plicative documents the production of which clearly constitutes harassment or imposes a burden on the producing party far out of proportion to any benefit received by the requesting party, see, e.g., Ex parte Compass Bank, 686 So.2d 1135, 1138 (Ala.1996); (c) when the trial court either imposes sanctions effectively precluding a decision on the merits or denies discovery going to a party’s entire action or defense so that, in either event, the outcome of the case has been all but determined and the petitioner would be merely going through the motions of a trial to obtain an appeal; or (d) when the trial court impermissibly prevents the petitioner from making a record on the discovery issue so that an appellate court cannot review the effect of the trial court’s alleged error. The burden rests on the petitioner to demonstrate that its petition presents such an exceptional case — that is, one in which an appeal is not an adequate remedy. See Ex parte Consolidated Publ’g Co., 601 So.2d 423, 426 (Ala.1992).”
Ex parte Dillard Dep’t Stores, Inc., 879 So.2d 1134, 1137 (Ala.2003) (emphasis added). This case fits within the privilege exception established in Ex parte Ocwen Federal Bank, FSB, 872 So.2d 810 (Ala.2003).
“Discovery matters are within the trial court’s sound discretion, and this Court will not reverse a trial court’s ruling on a discovery issue unless the trial court has clearly exceeded its discretion. Home Ins. Co. v. Rice, 585 So.2d 859, 862 (Ala.1991). Accordingly, mandamus will issue to reverse a trial court’s ruling on a discovery issue only (1) where there is a showing that the trial court clearly exceeded its discretion, and (2) where the aggrieved party does not have an adequate remedy by ordinary appeal.”
872 So.2d at 813.
“[T]he legislature has adopted a psychotherapist privilege. Section 34-26-2, Ala.Code 1975, states:
“ ‘[T]he confidential relations and communications between licensed psychologists and licensed psychiatrists and clients are placed upon the same basis as those provided by law between attorney and client, and nothing in this chapter shall be construed *711 to require any such privileged communication to be disclosed.’
“(Emphasis added.)
“This privilege provides a patient the right to refuse to disclose, and to prevent others from disclosing, confidential communications between the patient and psychotherapist made for the purpose of diagnosis or treatment of the patient’s mental condition, and it encompasses notes or records made by the psychotherapist. Ex parte Rudder, 507 So.2d 411 (AIa.1987)....
[[Image here]]
“It follows that the privilege is not easily outweighed by competing interests.
“ ‘Statutes such as § 34-26-2 are intended to inspire confidence in the patient and encourage him in making a full disclosure to the physician as to his symptoms and condition, by preventing the physician from making public information that would result in humiliation, embarrassment, or disgrace to the patient, and are thus designed to promote the efficacy of the physician’s advice or treatment. The exclusion of the evidence rest in the public policy and is for the general interest of the community.’
“Ex parte Rudder, [507 So.2d 411, 413 (Ala.1987)]....
[[Image here]]
“The Alabama legislature placed the protection to be provided by the psychotherapist-patient privilege on the same level as the protection provided by the attorney-client privilege. § 34-26-2. Accordingly, like the attorney-client privilege on which it was modeled, the psychotherapist-patient privilege is personal to the patient, and only the patient may waive it. Watson v. State, 504 So.2d 339 (Ala.[Crim.App.]1986). See Swain v. Terry, 454 So.2d 948 (Ala.1984). In order to impliedly waive a testimonial privilege, the holder of the privilege must objectively manifest a clear intent not to rely upon the privilege. Jordan v. State, 607 So.2d 333, 336 (Ala.Crim.App.1992).”
Ex parte United Serv. Stations, Inc., 628 So.2d 501, 503-05 (Ala.1993) (emphasis added). Accord Rule 503(b), Ala. R. Evid. See Rule 503(c), Ala. R. Evid. Even though T.O.’s psychotherapist-patient privilege could be claimed for him by the psychiatrist Dr. Kahn, the patient T.O., the mother E.O., or the father J.O., Rule 503(c), only the patient T.O. could waive the privilege, Watson v. State, 504 So.2d 339, 344 (Ala.Crim.App.1986) (“Thus, while either the client or the psychologist, • on the client’s behalf, may assert the privilege, only the client may waive the privilege.”). See Ex parte United Serv. Stations, 628 So.2d at 505. Since T.O.’s mother was not the patient, she lacked standing to waive T.O.’s psychotherapist-patient privilege. Watson and Ex parte United Serv. Stations.
The next issue is whether the patient T.O., represented at his mother’s deposition by their counsel, waived T.O.’s psychotherapist-patient privilege by failing to object to the questions propounded to his mother. Ex parte Pepper, supra, addresses this issue.
In Ex parte Pepper, the automobile driven by defendant Malcolm Black Pepper struck the rear of the automobile driven by plaintiff Betty Lee Smith. Subsequently, Smith visited Dr. Matthew Berke, an orthopedic surgeon, for neck and back pain and for headaches that she attributed to the automobile accident. Dr. Berke referred Smith to Dr. Meneese, a neuropsy-chologist, who performed a psychological evaluation of Smith. Dr. Meneese reported his findings to Dr. Berke. Thereafter,
*712 “Ms. Smith sued Pepper for damages based on the injuries she claimed had resulted from the accident. During the deposition of Dr. Berke, Pepper obtained a copy of Dr. Meneese’s report. He then noticed Dr. Meneese’s deposition, pursuant to Rule 30, Ala. R. Civ. P. On the day set for the deposition, Ms. Smith informed Pepper that she was invoking the psychotherapist-patient privilege, pursuant to Rule 503, Ala. R. Evid., and § 34-26-2, Ala.Code 1975. Based on Ms. Smith’s assertion of this privilege, Dr. Meneese refused to testify concerning his evaluation of Ms. Smith.
“On May 23, 2000, Pepper moved the trial court to compel the deposition of Dr. Meneese.”
Ex parte Pepper; 794 So.2d at 341 (footnote omitted). Among other arguments, Pepper argued that Smith had waived the psychotherapist-patient privilege by “ ‘never objecting to the discovery of Dr. Me-neese’s report and by not objecting to the deposition until one hour before it was scheduled.’ ” Id. at 342. The trial court denied the motion to compel.
On Pepper’s petition for a writ of mandamus, this Court stated that
“Ms. Smith did not waive her psychotherapist-patient privilege, because she did not ‘objectively manifest a clear intent not to rely upon the privilege.’ [Ex parte United Service Stations, Inc., 628 So.2d 501, 505 (Ala.1993)]....
“In this case, Pepper questioned Dr. Berke, an orthopedic physician, about Dr. Meneese’s conclusions and opinions relating to Ms. Smith’s psychological treatment. Given the authority of Ex parte United Service Stations, we cannot say that Ms. Smith’s failure to object to Dr. Berke’s testimony regarding Dr. Meneese’s report amounted to an implied waiver of the psychotherapist-patient privilege.”
Ex parte Pepper, 794 So.2d at 344-45. Because the materials submitted to this Court do not establish that T.O. “objectively manifest[ed] a clear intent not rely upon the privilege,” Ex parte United Service Stations, 628 So.2d at 505, during E.O.’s deposition, the materials do not establish that the privilege was waived by T.O., the only person with standing to waive it.
Thus, the trial court erred in holding that
“[t]he privilege was waived when [E.O.], [T.O.’s mother], answered questions regarding [T.O.’s] treatment at [the mental health facility] at her deposition regarding this case without sufficient objection from the [defendants’] attorney.”
Therefore, the trial judge exceeded his discretion in ordering the disclosure of the privileged information. Consequently, we grant the petitions, issue the writ, and direct the trial judge to vacate and to countermand his order requiring T.O.’s psychiatrist to submit to deposition by the plaintiffs and to produce T.O.’s psychiatric records pursuant to the plaintiffs’ third-party subpoena.
PETITIONS GRANTED; WRIT ISSUED.
NABERS, C.J., and HOUSTON, SEE, LYONS, BROWN, HARWOOD, WOODALL, and STUART, JJ., concur.