Earl J. GOREL

v.

UNITED STATES of America.

Civ. A. No. H–80–1217, Crim.
No. H–78–42.

United States District Court,
S. D. Texas,
Houston Division.

Dec. 29, 1981.

David H. Berg, Houston, Tex., for petitioner.

Samuel G. Longoria, Asst. U.S. Atty., Houston, Tex., for respondent.

## MEMORANDUM AND ORDER

SINGLETON, Chief Judge.

On July 27, 1978, petitioner Earl J. Gorel was convicted in this court of conspiracy to kidnap. He received a three-year sentence. Prior to his trial petitioner moved to suppress his postarrest statements on the sole ground that there was excessive delay prior to his presentment before a magistrate. Petitioner was represented on the motion to suppress and at trial by privately retained counsel.

The conviction was affirmed by the Fifth Circuit Court of Appeals on September 17, 1979, 622 F.2d 100 (5th Cir. 1979). A Writ of Certiorari was denied March 24, 1980. Petitioner, represented by different retained counsel, then filed a motion to vacate his sentence pursuant to 28 U.S.C. § 2255 on June 3, 1980. Upon consideration of the testimony, including petitioner's, at trial and the testimony adduced at the motion to suppress hearing and because petitioner failed to timely raise his present basis for relief, this court denied petitioner's motion to vacate without evidentiary hearing on August 25, 1980.

The Fifth Circuit Court of Appeals reversed and remanded on September 21, 1981, this court's denial of the section 2255 motion, 659 F.2d 1073. Evidentiary hearing was held in this court on petitioner's section 2255 motion on November 19, 1981. During this hearing the factual background for petitioner's motion to vacate was fully explored. This memorandum and order contain the court's ruling on the section 2255 motion.

Petitioner Gorel's section 2255 motion is founded upon a claim that his fifth amendment rights were violated by the admission at trial of statements which petitioner made after he requested assistance of counsel. The court, after thorough consideration of the record, the files, and all relevant precedent, has concluded that petitioner's motion to vacate should not be granted.

## FINDINGS OF FACT

### Petitioners Background

Petitioner Earl J. Gorel was, at the time of his arrest, fifty-two years old. His background reflects that of a stable family man. He had been married twenty-six years to his current wife and had four children. Petitioner had never been arrested or convicted of any crime.

After graduating from high school in Houston, Texas petitioner enlisted in the U.S. Marine Corps. He trained for the corps in San Diego and at Texas A & M. His period of corps training at Texas A & M was the only time he attended college other than in night courses at the University of Houston in Houston, Texas.

Petitioner was honorably discharged from the Marine Corps in 1945 or 1946 after service in the South Pacific for three years. He worked throughout high school and after his time in the service became the manager of a retail store. Subsequently he opened his own clothing store in Houston. After selling his share of the clothing store to his partner, he became the general manager of a hotel in Galveston, Texas.

Petitioner then moved back to Houston and worked quite successfully for seven or eight years selling life insurance. He then transferred to a different insurance company to become a general agent in a supervisory capacity. After this job petitioner entered some investment ventures for a brief period then returned to traveling sales in the early 1970's. See trial transcript (T.T.) Vol. V, p. 62–78. The exact dates and lengths of time of petitioner's various en-

deavors are not revealed in the record nor are they strictly relevant.

In summation, petitioner was, at the time of his arrest, an intelligent, mature, and articulate man of wide business experience. He had full high school and some college education.

## THE ARREST AND INTERROGATION

■ When he was arrested for conspiracy to kidnap by agents of the Federal Bureau of Investigation, petitioner had just returned from work. It was approximately 5:40 in the evening on February 14, 1978. The agents knocked on his door and when petitioner answered he was told he was under arrest. The agents then gave petitioner his *Miranda* advice of rights form, explained it to him, and he signed it. Petitioner's wife had arrived home at the same time as petitioner and was the only other person in the home at that time.

The agents were reserved and courteous throughout the period of their presence in petitioner's home. Petitioner, himself, characterized their demeanor as that of "perfect gentlemen." T.T. Vol. V, p. 170. Petitioner was never handcuffed during the period of the interrogation.

After petitioner signed the waiver form, the agents began interviewing him concerning his connection with another suspect, Raymond Puscedu, and his involvement in the attempted kidnapping.

The record reveals two ostensibly distinct scenarios followed. Mr. Russ, one of the FBI agents, stated at the hearing on the motion to suppress that petitioner "made several telephone calls . . . in the interim we were interviewing him while he was trying to contact an attorney." Motion to Suppress, p. 34. Petitioner described the same activity as follows: "Prior to leaving the house, Mr. Russ told my wife I was going to require the services of an attorney, and [my wife] attempted to reach several people." T.T. Vol. V, p. 162. Petitioner explicitly stated he did not try to contact an attorney that evening. Id., p. 161–2.

Petitioner's wife testified at the hearing on the § 2255 motion that she did attempt to contact an attorney during the period that the agents were in the Gorel home but that she was uncertain who instructed her to call an attorney. § 2255 Hearing Transcript (§ 2255 H.T.) p. 57–8. She stated that petitioner encouraged her to continue and that he wanted an attorney that night. Id., p. 59.

In the light of the foregoing testimony, the court finds that the attempts to contact an attorney were initiated to obtain representation by counsel at some time other than the period during which petitioner made the statements he now seeks to establish were obtained in violation of his fifth amendment rights to counsel. In so concluding the court does not directly discredit any testimony obtained at any proceeding. Neither the testimony of Agent Russ nor that of Mrs. Gorel directly contradicts the court's determination. It is clear that petitioner did seek through his wife to obtain an attorney on the evening of February 14, 1978. What is unclear from the testimony of Mr. Russ or Mrs. Gorel is the actual intent underlying those attempts. Petitioner, himself, supplied this missing link in his testimony at the trial. He stated, as indicated above, that the attempts were initiated, perhaps upon an agent's suggestion, because he would require legal representation to assist in his defense at some time in the future.

Neither agent who testified indicated the slightest belief that the petitioner sought counsel for present assistance. § 2255 H.T. p. 75. The court considers their testimony credible. The court finds, therefore, that the attempts to reach an attorney were in no sense equivocal requests or efforts to obtain present assistance.

## THE RELEVANT LAW

*Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) provides a rigid rule of exclusion of any statement (in the prosecution's case in chief) which is taken in violation of the requirements established in *Miranda* to protect an individual's fifth

amendment right to remain silent and to representation by an attorney. See *Harryman v. Estelle*, 616 F.2d 870 (5th Cir. 1980) (en banc).

▪ This circuit has maintained that an unequivocal request for counsel precludes subsequent police-initiated interrogation and that inquiry as to waiver is prohibited. This rule, established in *United States v. Priest*, 409 F.2d 491 (5th Cir. 1969), has remained the point of departure in most *Miranda* inquiries. See generally *United States v. Little*, 647 F.2d 533 (5th Cir. 1981), *Blasingame v. Estelle*, 604 F.2d 893 (5th Cir. 1979), *Nash v. Estelle*, 597 F.2d 513 (5th Cir. 1979) (en banc).

▪ Explicitly stated in *Priest* and recently confirmed by the Supreme Court was that once an accused has invoked his right to counsel, a valid waiver of that right cannot be established by showing merely that he responded to police-initiated interrogation. *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981).

▪ In *Nash, supra*, the Fifth Circuit, en banc, held that an equivocal request for counsel did not preclude all further interrogation between a suspect and the interrogating officer. In a situation where a suspect equivocally requests an attorney, further questioning thereafter must be limited to clarifying that request. If it is clarified as a present desire for representation by counsel, all interrogation must cease as required by *Priest*. *Thompson v. Wainwright*, 601 F.2d 768, 771 (5th Cir. 1979). Further, the *Nash* court noted that a suspect has a continuing right to obtain assistance of counsel. *Nash, supra* at 518.

▪ A waiver of counsel must be knowing, intelligent, and voluntary, a matter which depends in each case "upon the particular circumstances surrounding that case including the background experience and conduct of the accused." *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938); *Edwards, supra*. While the signing of a *Miranda* waiver form is not conclusive of the question of whether a suspect waived his right to counsel, it is

usually very strong evidence, *Blasingame, supra*.

In accordance with the court's findings above, the court has determined that no violation of *Miranda* occurred because there was a knowing, intelligent, and voluntary waiver of the *Miranda* rights (this waiver will be discussed below) and there was no subsequent request—explicit or equivocal—for present assistance of counsel. The basis for this latter conclusion is petitioner's testimony at trial noted in the Findings of Fact, p. 4–5. This court would reach the same conclusion, however, without consideration of this testimony because it strains credulity beyond reason to suggest that the testimony of Agent Russ and Mrs. Gorel, under the totality of the circumstances of this case, established the necessary equivocation to invoke the *Nash* rule. The analysis which follows is undertaken without consideration of petitioner's crucial testimony that he did not seek the services of an attorney for representation on the evening of his arrest.

As this court interprets and applies the law of the fifth amendment, if petitioner, or his wife upon his instruction, attempted to contact an attorney for representation at the time of his interrogation or if their actions in attempting to reach an attorney were equivocal, *Nash, supra*; *Thompson, supra*, then petitioner's fifth amendment rights were not respected. That a waiver form was signed, *Blasingame, supra*, or that petitioner ultimately did respond to the interrogation, *Edwards, supra*, is not conclusive of the inquiry as to whether petitioner knowingly, intelligently, and willingly waived his right to counsel during the period in which he gave inculpatory statements.

▪ However, the court will not construe any mention of an attorney as an invocation of the right to counsel or as an equivocal request for counsel which forecloses interrogation. The *Nash* exception to the per se rule of *Priest* is designed to "avoid attributing a talismanic quality to the word 'attorney' . . . while at the same time safeguarding [a defendant's] . . . right to assistance

of counsel when he wants it and says so." *Thompson, supra* at 772. As noted, the *Nash* exception basically permits interrogation of an accused to continue when he has made an equivocal request for an attorney, but the interrogation must be confined to clarifying the equivocal request. Logically, it does not follow necessarily that mention of the word attorney is either a *Priest* per se invocation of the right to counsel or a *Nash* equivocal request for counsel. Implicit in a *Nash* inquiry is the possibility that an accused, who in some way indicates he may want representation, does not have in fact a present desire for counsel. What is certain and clear to all present at the time may be made to appear equivocal only because of the manner in which it is recounted in the proceedings subsequent to the incident in question.

While the court will indulge a presumption that any effort to contact an attorney is an invocation to the right of present representation by counsel, where conclusions drawn from the totality of the circumstances overwhelmingly rebut this presumption, the court will decline to find *Miranda* violated. This is such a case.

The record does not suggest any lack of capacity on the part of petitioner to intelligently execute the waiver. See *United States v. Brown*, 569 F.2d 236 (5th Cir. 1978) (en banc), *Blasingame, supra*, compare *Government of the Canal Zone v. Gomez*, 566 F.2d 1289 (5th Cir. 1978) (accused illiterate). Nor does the court's independent observation lead to a different conclusion.

Petitioner Gorel, as fully discussed above, was an intelligent man with no limitation on his ability to understand the *Miranda* warnings on the form which he signed. Petitioner, himself, stated the agents were in no way harsh or overbearing. He was in his own home early in the evening immediately following work. There is no indication he was intoxicated. His wife was present. There is no suggestion of coercion. Petitioner was completely capable of articulating his desire for immediate representation and no external circumstances existed to mute a manifest desire into a mere suggestive act.

Therefore upon review of the circumstances, aside from petitioner's explicit statement that he did not seek an attorney for present assistance, one is led to the inevitable conclusion that petitioner did not desire counsel at that time and that he knowingly, intelligently, and voluntarily waived his *Miranda* rights.

Accordingly, it is hereby ORDERED, ADJUDGED, and DECREED that petitioner Earl J. Gorel's motion to vacate his sentence pursuant to 28 U.S.C. § 2255 be, and the same is, DENIED.

The court finds it unnecessary to reach the question of whether petitioner's failure to raise the *Miranda* issue timely should be excused for cause.

Petitioner's release on personal recognizance, which this court granted on November 20, 1981, pending resolution of this section 2255 motion, will be terminated on the third day following the entry of this Order. Petitioner is directed to return, at his own expense, to the Federal Correctional Institution at Seagoville, Texas, within the three days following entry of this Order.