Richard Morales CASTILLO, Appellant,

v.

The STATE of Texas, Appellee.

No. 1022–84.

Court of Criminal Appeals of Texas,
En Banc.

Dec. 16, 1987.

Manuel J. Barraza, El Paso, for appellant.

Steve W. Simmons, Dist. Atty., D.D. Sitgraves, Karen Shook, Asst. Dist. Attys., El Paso, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

McCORMICK, Judge.

Appellant was convicted of murder and punishment was assessed at forty years' confinement.

On original submission the Eastland Court of Appeals affirmed appellant's conviction in an unpublished opinion. *Castillo v. State*, No. 11–84–053–Cr (Tex.App.—Eastland, delivered September 13, 1984). In one of his grounds of error in the Court of Appeals, appellant argued that the trial court erred in finding that appellant voluntarily waived his right to counsel during the taking of his statement. The Court of Appeals held that the evidence supported the trial court's finding.

In his petition for discretionary review, appellant asks us to review this holding. The record shows that a hearing on the motion to suppress the confession was held outside the presence of the jury. At the hearing Judge Walter McGhee, an El Paso justice of the peace, testified that the fifteen year old appellant was brought to his (the judge's) home at approximately 11:55 p.m. on August 19, 1980. In accordance with the V.T.C.A., Family Code, Section 51.09, Judge McGhee gave appellant his warnings. These warnings included appellant's right to have a lawyer present during questioning by police. McGhee testified that he felt appellant understood the warnings. Following these warnings, appellant was taken by Detective George Drennan to the local juvenile detention facility. There

appellant indicated that he wished to make a statement. Drennan testified that he again warned appellant of his rights, including his right to have an attorney present during questioning. Appellant told Drennan he understood his rights and then began giving his statement. Drennan testified that after appellant had finished giving his statement appellant, while looking through his wallet, pulled out an attorney's business card and laid it on the desk.

"Q. And then explain what happened when he showed you the card?

"A. I had asked him a question. I don't specifically recall what the exact question was, but he reached back into his wallet. He wasn't handcuffed. He was going through his wallet and he pulled out a card and put it down on the table there in front of the typewriter. He said, 'This is my lawyer.' I asked him if he had a lawyer in the past and he said that he did.

"Q. Did he ask you for an attorney then?

"A. No, he did not.

"Q. Did he say what that lawyer was for? Explain what he said.

"A. I asked him if that was his lawyer and he stated it was. So I said, 'So you have had a lawyer in the past?' or words to that effect, and he said yes. At that particular point I asked him if he had been in trouble before and he said yes. He said, 'This is why I have this card. The lawyer gave it to me.' I asked him, again, if he had ever been in trouble, if he had ever been charged with another offense.

"Q. And what did he say?

"A. He said that he had been charged with a rape.

"Q. At that time did he say, 'I want to see this lawyer at this point?'

"A. No, he did not.

"Q. Did you have any way of knowing what he meant by that? Did you believe him to be asking for a lawyer?

"A. No, I believe that he was not asking for a lawyer.

"Q. Because you asked him some questions about that, right?

"A. Yes. I asked him the question, but he never specifically ask (sic) me for an attorney.

"Q. So he handed you that card but he never asked you for a lawyer?

"A. He never did."

On cross-examination, Drennan testified that, although he filed a report which indicated that appellant had pulled out the attorney's business card immediately after Drennan had read him the warnings and before appellant began giving his statement, the report was inaccurate and the true sequence of events was as he testified on direct examination. Drennan further testified that in accordance with Section 51.09 of the Family Code appellant was again taken before Judge McGhee. Judge McGhee testified appellant was again brought before him at approximately 2:00 a.m. on August 20. Detective Drennan gave Judge McGhee appellant's unsigned statement. Once again Judge McGhee went over the juvenile warnings with appellant, including appellant's right to consult with an attorney. Judge McGhee then went over appellant's statement with him and made sure that appellant was voluntarily confessing. Judge McGhee testified that at the conclusion of his conversation with appellant he was convinced that appellant understood what he was doing and was acting voluntarily. Appellant then signed the statement. McGhee testified that at no time during this latter conversation did appellant indicate that he wished to speak with counsel.

In *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the Supreme Court outlined the procedural safeguards that must be taken during custodial interrogation. Included in these safeguards was the requirement that the suspect be told of his right to the presence of an attorney, either retained or appointed. The Court went on to acknowledge that the suspect's right to remain silent and his

right to counsel could be waived but added a cautionary note:

"If, however, he indicates *in any manner* and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning...." 384 U.S. at 444–445, 86 S.Ct. at 1612.

Clearly under *Miranda*, an unequivocal request for counsel precludes subsequent police-initiated interrogation. *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981); *Bush v. State*, 697 S.W.2d 397 (Tex.Cr.App.1985); *Green v. State*, 667 S.W.2d 528 (Tex.Cr.App.1984); *Coleman v. State*, 646 S.W.2d 937 (Tex.Cr. App.1983). However, the issue is not so clear-cut in situations like the instant case where there is no unequivocal request.[1]

In *Curtis v. State*, 640 S.W.2d 615 (Tex. Cr.App.1982), as Curtis was being led from his home by officers, someone who was not identified at trial stopped Curtis and asked him if he had a lawyer. Curtis replied that he did not have a lawyer, that he did not want one and that he thought his brother was getting one for him. Later in a conversation with the officer who ultimately took his confession, Curtis made an inquiry as to how he would be provided a court appointed attorney. Noting that Curtis told the officer he wanted to go ahead and give a statement, this Court held that neither the incident outside the appellant's home nor his inquiry as to court appointed counsel was "tantamount to invocation of

right to have counsel present during custodial interrogation." Compare *Ochoa v. State*, 573 S.W.2d 796 (Tex.Cr.App.1978), where testimony from both the interrogating officer and Ochoa showed that prior to interrogation, Ochoa made the statement that he thought he should probably talk to an attorney before answering any questions or signing anything. The interrogating officer testified that, since he did not consider this to amount to a formal request for an attorney and since Ochoa did not insist upon talking to an attorney, he continued questioning him until he made a confession. On appeal, this Court held that although the defendant's statement did not amount to a formal request for counsel it was a sufficient indication that the defendant wanted to exercise his right to counsel.

In *United States v. Jardina*, 747 F.2d 945 (5th Cir.1984), the defendant never requested to see an attorney but stated that he already had an attorney in Texas. He then told the interrogating officers that he was interested in seeing what type of deal he could arrange between the government and his attorney. The Court of Appeals held that the mere mention of an attorney did not serve as an invocation of Jardina's right to counsel:

"... Jardina never asked that counsel be present at the ongoing questioning. Indeed, the words he spoke clearly indicated that he wished his attorney to work out a cooperative deal with the government in the future. Jardina stat-

---

**1.** In *Smith v. Illinois,* 469 U.S. 91, 105 S.Ct. 490, 83 L.Ed.2d 488 (1984), the Supreme Court noted in dicta that courts have developed conflicting standards for determining the consequences of an ambiguous request for counsel. The Court wrote that one group of courts have defined a threshold standard of clarity for such requests, and have held that requests falling below this threshold do not trigger the right to counsel. Thus not all references to counsel will constitute an invocation of the right to counsel. *People v. Krueger,* 82 Ill.2d 305, 311, 45 Ill.Dec. 186, 189, 412 N.E.2d 537, 540 (1980), cert. denied, 451 U.S. 1019, 101 S.Ct. 3009, 69 L.Ed.2d 390 (1981). A second group of courts have adopted an approach which holds that when an accused makes an equivocal statement that arguably can be construed as a request for counsel, all interrogation must immediately cease except for narrow questions designed to clarify the earlier

statements and the accused's desires respecting counsel. *Thompson v. Wainwright,* 601 F.2d 768, 771–772 (5th Cir.1979); *State v. Moulds,* 105 Idaho 880, 888, 673 P.2d 1074, 1082 (App. 1983). Finally, some courts hold that all questioning must cease upon any request for or reference to counsel, however equivocal or ambiguous. *People v. Superior Court,* 15 Cal.3d 729, 735–736, 125 Cal.Rptr. 798, 802–803, 542 P.2d 1390, 1394–1395 (1975), cert. denied, 429 U.S. 816, 97 S.Ct. 58, 50 L.Ed.2d 76 (1976). The opinion included our case of *Ochoa v. State,* 573 S.W.2d 796, 800–801 (Tex.Cr.App.1978) in this last category. We do not construe *Ochoa* in that manner. Rather we find that *Ochoa* falls within the first category. And by this opinion we are enunciating our position that in Texas not every mention of the word "attorney" operates as a request for counsel. *Massengale v. State,* 710 S.W.2d 594 (Tex.Cr.App.1986).

ed without the slightest ambiguity that he would then and there answer some questions but not others. *The word 'attorney' has no talismanic qualities. A defendant does not invoke his right to counsel any time the word falls from his lips.* See *Nash,* supra [*Nash v. Estelle,* 597 F.2d 513 (5th Cir.1979) cert denied, 444 U.S. 981, 100 S.Ct. 485, 62 L.Ed.2d 409 (1979) ], at 519; *Thompson v. Wainwright,* 601 F.2d 768, 772 (5th Cir.1979). Jardina's statements and actions did not invoke any present right to counsel." *United States v. Jardina,* 747 F.2d at 949. (emphasis added, material in brackets added).

In *Gorel v. United States,* 531 F.Supp. 368 (S.D.Tex.1981), Gorel a middle-aged business man was arrested at his home by F.B.I. agents. He was immediately given his *Miranda* warnings. At the hearing on his motion to suppress, Gorel testified that prior to leaving his house one of the F.B.I. agents told his (Gorel's) wife that her husband was going to need the services of an attorney. Gorel testified that he himself made no attempt to contact an attorney at that time. Gorel's wife testified that, although she could not remember who instructed her to call an attorney, she did attempt to contact an attorney while the agents were in her home. She further testified that her husband told her to continue to try to reach an attorney as he wanted an attorney that night. One of the F.B.I. agents testified that while they were questioning Gorel at his home, he was trying to contact an attorney. At trial, Gorel testified that the attempts to contact counsel were made because he realized, as a result of the agent's suggestion, that he would need legal representation to assist in his defense at some time in the future.

The district court found that the key to the issue was Gorel's intent at the time. Analyzing the facts the court held that the attempts to contact an attorney were initiated to obtain representation by counsel for Gorel at a time in the future and not during the questioning immediately following Gorel's arrest.

"... the court will not construe any mention of an attorney as an invocation of the right to counsel or as an equivocal request for counsel which forecloses interrogation.

"... Implicit ... is the possibility that an accused, who in some way indicates he may want representation, does not have in fact a present desire for counsel....

"While the court will indulge a presumption that any effort to contact an attorney is an invocation to the right of present representation by counsel, where conclusions drawn from the totality of the circumstances overwhelmingly rebut this presumption, the court will decline to find *Miranda* violated." *Gorel v. United States,* 531 F.Supp. at 371–372.

 As shown above, not every mention of the word "attorney" constitutes an invocation of the right to counsel. The issue to be resolved then in the instant case is whether the appellant's action of pulling an attorney's business card out of his wallet was an invocation of his right to counsel. We make this determination by looking at the totality of the circumstances. *Moran v. Burbine,* 475 U.S. 412, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986). *Miranda v. Arizona,* supra; *Holloway v. State,* 691 S.W.2d 608 (Tex.Cr.App.1984); *McKittrick v. State,* 541 S.W.2d 177 (Tex.Cr.App.1976). See also *Fare v. Michael C.,* 442 U.S. 707, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979) (holding that the totality of the circumstances analysis is applicable in cases involving waiver of rights by juveniles.) The totality approach mandates inquiry into all the circumstances surrounding the interrogation, including an evaluation of the juvenile's age, experience, education, background, intelligence and his capacity to understand the warnings given him, the nature of this Fifth Amendment rights and the consequences of waiving those rights. *Fare v. Michael C.,* supra.

 The record reflects that the fifteen year old appellant was warned of his rights some five times before he signed his confession. At no time did he make an unequivocal request for counsel. After pulling out the business card and showing it to the detective, appellant was taken back to

Judge McGhee who questioned him thoroughly about his desire to make a written confession. Judge McGhee testified that throughout the whole process appellant was calm and appeared to know what he was doing. Again, although clearly presented with the opportunity to request counsel, appellant made no such request. Viewing the totality of the circumstances, we hold that appellant's action of pulling an attorney's business card out of his wallet and showing it to the detective was not an invocation of his right to counsel. We overrule this ground for review.

The judgments of the Court of Appeals and the trial court are affirmed.

CLINTON and TEAGUE, JJ., dissent.