COURT OF APPEALS

SECOND DISTRICT OF TEXAS
FORT WORTH
 NO. 2-04-315-CR
NO. 2-04-316-CR
NO. 2-04-317-CR
NO. 2-04-318-CR
NO. 2-04-319-CR
 
 
DOMINIC DEAN POLK                                                            APPELLANT
 
V.
 
THE STATE OF TEXAS                                                                  STATE
 
 ------------
 FROM THE 362ND DISTRICT COURT OF DENTON COUNTY
 ------------
 OPINION
 ------------
        A jury convicted Appellant Dominic Dean Polk of five burglaries of a
habitation charged in separate indictments and assessed his punishment at
twenty years’ confinement in the Institutional Division of the Texas Department
of Criminal Justice in cause number 2-04-315-CR, which had no enhancement
paragraphs, and at seventy five years’ confinement in the remaining four cases. 
The jury also assessed a fine of $1000 in each of the five cases. The trial court
sentenced Appellant accordingly.
        Appellant brings four points on appeal, challenging the admission of
certain statements, the denial of requested jury instructions, and the trial
court’s denial of a mistrial after prosecutorial misconduct. Because we hold
that the trial court did not reversibly err, we affirm the trial court’s judgments.
Background Facts
        Appellant was arrested on December 5, 2003 and taken to jail. While
Appellant was incarcerated, Officer Fitzgerald attempted to discuss some
burglaries with him. Appellant refused to talk to Fitzgerald. Fitzgerald,
according to Appellant, threatened that if Appellant did not admit to all the
burglaries, Fitzgerald would charge him with a new one every time he was
released from jail. Appellant admitted that he was on parole at the time of the
burglaries.
        The following day, Officer Crain attempted to speak with Appellant. 
Appellant refused to talk to Crain. Appellant subsequently made bail. On
December 18, 2003, Appellant was arrested again. Appellant then confessed
to four separate burglaries, providing two written statements, one on December
18 and one on December 19. Appellant’s fingerprints were discovered in a fifth
burglarized home. On December 19, before giving his second written
statement, Appellant accompanied Detective Smith and Detective Taylor as
they drove around Denton so that Appellant could point out homes that he had
burglarized. The conversations during this excursion were not recorded by any
means.
Written Statements
        In his third point, Appellant argues that the trial court erred by failing to
suppress his typed statements because the police failed to honor his invocation
of his right to silence, and/or his right to terminate the police interviews, and
his right to counsel. Although Appellant refused to talk to the officers on
December 5, when he was rearrested on December 18, he was arrested for a
new offense. The invocation of his right to remain silent was case-specific and
related only to those offenses for which he was arrested on December 5. [1] 
After he talked to the officers regarding the new offense on December 18, he
voluntarily continued to talk to them about all of the offenses. Although
Appellant mentioned attorneys on December 18, he never clearly and
specifically requested his attorney. [2] We therefore overrule Appellant’s third
point.
Improper Impeachment
        In his first point, Appellant contends that the trial court abused its
discretion by admitting the State’s impeachment evidence. After the State
rested its case in chief, Appellant announced to the court that he was forced
to put on a case because the trial court improperly admitted evidence,
specifically his recorded and unrecorded statements. On the stand, Appellant
denied committing the burglaries. He also testified that (1) his written
statements were really the police officer’s, not his, (2) he did not point out
houses that had been burglarized, and (3) Officers Smith and Taylor had lied
about his words and actions. Additionally, he testified that his drug problem
was in the past and that he had confessed to the burglaries only because the
officers had promised not to file half of them and had promised him drug
rehabilitation.
        After Appellant testified, the State called Keith Smith and Appellant’s
parole officer, Cynthia Herndon. Before their testimony, the prosecutor stated,
outside the jury’s presence,
Because of the defendant’s testimony, I intend . . . to go into
the statements that Mr. Polk made concerning the—while they
were driving around identifying the houses that were burglarized
and the specifics as to what items were taken out of those houses
and if he provided any information to Mr. Polk beforehand. I
believe this is all permissible impeachment.
Appellant objected on the basis of Article 38.22, the Fifth Amendment,
Miranda, [3] the Fourteenth Amendment, and Article I, section 10 of the Texas
Constitution. Appellant requested a limiting instruction, but he refused the
limiting instruction “that questions regarding this are offered for impeachment
purposes only, not for the truth of the matter asserted.” The State said that no
instruction was necessary because, as admissions of a party opponent, the
statements were not hearsay. [4] Appellant asked for a limiting instruction
indicating that the statements were not taken in compliance with statutory and
constitutional requirements and “whatever the court would like to stick in as to
why it’s being admitted,” which the trial court denied.
        The trial court allowed the State to present without limitation the
testimony of Detective Smith as to the unrecorded statements Appellant made
while riding around with Smith and Taylor. The trial court also allowed the
State to present the testimony of parole officer Cynthia Herndon as to
unrecorded statements Appellant made to her on December 22, 2003. The trial
court denied Appellant’s blanket request for a limiting instruction to her
testimony. Appellant argues that admission of the testimony was error because
the State did not lay the proper predicates and the trial court did not provide a
limiting instruction.
        “A criminal defendant who chooses to testify may be impeached,
contradicted, cross-examined on new matters, and treated in every respect as
any other witness, as long as any overriding constitutional or statutory
prohibitions for the defendant’s protection are honored.” [5] Usually, a witness
may not be impeached on a collateral matter. [6] But “when an accused testifies
gratuitously as to some matter that is irrelevant or collateral to the proceeding,
as with any other witness[,] he may be impeached by a showing that he has
lied or is in error as to that matter.” [7]
        Article 38.22, section 5 of the Texas Code of Criminal Procedure allows
the admission “of a voluntary statement, whether or not the result of custodial
interrogation, that has a bearing upon the credibility of the accused as a
witness” even if the other requirements of Article 38.22, such as the recording
of the statement and the giving of the warnings, are not met. [8] On appeal,
Appellant does not raise a voluntariness issue. From our review of his
testimony and the rebuttal testimony of Smith and Herndon, the rebuttal
testimony contradicted Appellant’s testimony about the charged offenses as
well as the collateral matter of his drug usage. The rebuttal testimony therefore
went to Appellant’s credibility. Consequently, we hold that the trial court
properly admitted the rebuttal evidence.
        But when evidence is offered for impeachment of a testifying defendant,
the rule that a limiting instruction must be provided to the jury at the time the
testimony is offered still applies. [9] Appellant complains about the omission of
a timely limiting instruction for the testimony of both rebuttal witnesses. But
the record shows that he refused an adequate instruction as to the testimony
of Smith. Under the doctrine of invited error, a criminal defendant may not
create error, whether statutory or constitutional, and then submit that error as
a basis for appellate relief. [10] On the other hand, Appellant timely requested a
blanket limiting instruction for the testimony of Herndon, which the trial court
summarily denied. We hold that the trial court erred by not giving the jury a
timely limiting instruction regarding Herndon’s testimony.
        Having found error, we must conduct a harm analysis to determine
whether the error calls for reversal of the judgment. [11] Because Appellant has
not raised constitutional concerns on appeal, we treat this as an error in the
admission of evidence, which is not constitutional. [12] Consequently, rule
44.2(b) is applicable. [13] Therefore, we are to disregard the error unless it
affected Appellant’s substantial rights. [14] A substantial right is affected when
the error had a substantial and injurious effect or influence on the jury’s
verdict. [15] In making this determination, we review the record as a whole. [16]
        The jury charge provided that none of Appellant’s statements should be
considered for any purpose unless the jury believed beyond a reasonable doubt
that the statement in question was voluntary, but that his statements could be
used as evidence against him if the jury believed that they were voluntary. On
the other hand, the charge then went on to say that Appellant’s statements
could be admitted if written and signed by him after he waived his Miranda
rights. No instruction was given that clearly limited the use of Appellant’s oral
statements to the issue of his credibility.
        But the evidence contained in Appellant’s properly admitted written
statements, as well as other evidence in the case, such as fingerprints, was
sufficient to sustain his convictions. We cannot say that the additional
testimony concerning his pointing out houses that he had burglarized and his
other oral statements to police officers and to his parole officer added
significantly to the evidence against him. We therefore cannot say that the
omission of the limiting instruction had a substantial and injurious effect or
influence on the jury’s verdict. We overrule Appellant’s first point.
Jury Charge Error
        In his second point, Appellant contends that the trial court erred by not
giving an application paragraph on voluntariness and by not giving a lesser
included instruction on theft in cause number 2-04-316-CR. The trial court
instructed the jury as follows on the issue of voluntariness:
You are instructed that a statement of the defendant may be
used as evidence against him if the jury believes beyond a
reasonable doubt that the statement was freely and voluntarily
made by the defendant without compulsion or persuasion. 
Therefore, unless the jury believes beyond a reasonable doubt that
the statement was freely and voluntarily made without compulsion
or persuasion, or if you have a reasonable doubt thereof, you shall
not consider any statement of the accused for any purpose nor any
evidence obtained as a result thereof.

This is a proper application paragraph on the issue of voluntariness. [17]
        Appellant also complains that he was improperly denied an instruction on
the lesser included offense of theft in one of the cases. The indictment in
cause number 2-04-316-CR charged that Appellant “did then and there
intentionally or knowingly enter a habitation, without the effective consent of
[the complainant], the owner thereof, with intent to commit theft and did
attempt to commit and commit theft.” Knowing possession of recently stolen
property is a type of theft. [18] That is, Appellant could have intentionally or
knowingly possessed the property stolen in the burglary without entering the
house and without participating in the burglary as a party. Appellant, however,
disputed a necessary element of theft when he denied knowing that the money
and ring that his friend L.J., whom Appellant blamed for the burglary, had
allegedly given him were stolen. [19] Because there was no evidence that
Appellant knowingly possessed stolen property that he did not obtain through
burglary, he was not entitled to a lesser included instruction on theft. [20] We
overrule Appellant’s second point.
Denial of Mistrial for Prosecutorial Misconduct
        In his fourth point, Appellant complains that the trial court abused its
discretion by failing to grant a mistrial because of prosecutorial misconduct,
specifically, the asking of improper questions and the eliciting of improper
evidence on direct examination. Prosecutorial misconduct usually involves a
deliberate violation of a court order coupled with “misconduct so blatant as to
border on being contumacious.” [21] In Ladd v. State, [22] the Texas Court of
Criminal Appeals held,
A mistrial is a device used to halt trial proceedings when error
is so prejudicial that expenditure of further time and expense would
be wasteful and futile. Thus, a trial court may properly exercise its
discretion to declare a mistrial if an impartial verdict cannot be
reached, or if a verdict of conviction could be reached but would
have to be reversed on appeal due to an obvious procedural error. 
The determination of whether a given error necessitates a mistrial
must be made by examining the particular facts of the case. The
asking of an improper question will seldom call for a mistrial,
because, in most cases, any harm can be cured by an instruction
to disregard. A mistrial is required only when the improper
question is clearly prejudicial to the defendant and is of such
character as to suggest the impossibility of withdrawing the
impression produced on the minds of the jurors. A trial court's
denial of a mistrial is reviewed under an abuse of discretion
standard. [23]

        Officer Bolin testified without objection that he recognized Appellant
when he saw him walking down the street. When the prosecutor tried to elicit
information from the officer that he had handcuffed Appellant based on what
he knew of Appellant and the crime he was investigating, Appellant objected. 
At the hearing outside the jury’s presence, the trial court made clear that the
officer should not delve into his prior knowledge of Appellant. After the
hearing, the prosecutor again asked, “Now, based upon your knowledge of the
suspect and the crime that you were investigating at that time, is that why you
handcuffed him?” The trial court sustained Appellant’s objection and granted
his request for an instruction to disregard but denied his motion for mistrial.
        With the witness Officer Taylor, the prosecutor repeatedly violated the
judge’s instructions not to attempt back door hearsay. The prosecutor asked
Taylor about his conversation with Appellant, and Taylor testified that he
wanted Appellant to go with him to point out all the houses that he had broken
into. When Taylor tried to elaborate by testifying about Appellant’s gestures
or oral statements, the trial court sustained Appellant’s objection and granted
his request for an instruction to disregard but denied his motion for mistrial. 
This scenario played out four times in four pages of direct examination.
        Although we strongly disapprove of the trial prosecutor’s conduct of
ignoring the trial court’s orders in these instances, we cannot say that the
prosecutor’s conduct was so “prejudicial that expenditure of further time and
expense” would have been “wasteful and futile.” Therefore, based only on the
facts of these cases, we cannot say that the trial court’s conduct in denying a
mistrial amounted to an abuse of discretion.
        We are mindful, however, of the fifth Harris [24] prong, which requires us
to determine whether declaring the misconduct harmless would be likely to
encourage the State to repeat it with impunity. It is disturbing that the
prosecutor persevered in this misconduct despite the judge’s repeated rebukes. 
We are at a loss to explain this conduct. Yet the remainder of the record
reveals no other instance of such misconduct. Nor is there any evidence that
the prosecutor had engaged in similar conduct previously. The record in this
case does not create within us a conviction that declaring the misconduct
harmless would be likely to encourage the State to repeat it with impunity. We
therefore overrule Appellant’s fourth point.
Conclusion
        Having overruled Appellant’s four points, we affirm the trial court’s
judgments.
 
                                                          LEE ANN DAUPHINOT
                                                          JUSTICE

 
PANEL A:   CAYCE, C.J.; DAUPHINOT and MCCOY, JJ.
CAYCE, C.J., concurs without opinion.

PUBLISH
 DELIVERED: June 9, 2005

 
NOTES


1. See Michigan v. Mosley, 423 U.S. 96, 105, 96 S. Ct. 321, 327 (1975).


2. See Davis v. United States, 512 U.S. 452, 459, 114 S. Ct. 2350, 2355
(1994); Castillo v. State, 742 S.W.2d 1, 4-5 (Tex. Crim. App. 1987).


3. Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602 (1966).


4. See Tex. R. Evid. 801(e)(2).
5. Sanchez v. State, 707 S.W.2d 575, 577 (Tex. Crim. App. 1986); Cuellar v.
State, 613 S.W.2d 494, 495 (Tex. Crim. App. 1981).
6. Ramirez v. State, 802 S.W.2d 674, 675 (Tex. Crim. App. 1990).
7. Hammett v. State, 713 S.W.2d 102, 105 (Tex. Crim. App. 1986).
8. See Tex. Code Crim. Proc. Ann. art. 38.22, § 5 (Vernon 2005); United
States v. Havens, 446 U.S. 620, 627, 100 S. Ct. 1912, 1916 (1980); Harris
v. New York, 401 U.S. 222, 226, 91 S. Ct. 643, 646 (1971); Lykins v. State,
784 S.W.2d 32, 35-36 (Tex. Crim. App. 1989); Garza v. State, 18 S.W.3d
813, 826 (Tex. App.—Fort Worth 2000, pet. ref’d).
9. Hammock v. State, 46 S.W.3d 889, 894 (Tex. Crim. App. 2001).
10. See Garcia v. State, 919 S.W.2d 370, 393-94 (Tex. Crim. App. 1994) (op.
on reh'g); see also Prystash v. State, 3 S.W.3d 522, 531 (Tex. Crim. App.
1999) (distinguishing waiver from invited error), cert. denied, 529 U.S. 1102
(2000).
11. Tex. R. App. P. 44.2.
12. See Johnson v. State, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).
13. Tex. R. App. P. 44.2(b).
14. Id.; see Mosley v. State, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998)
(op. on reh’g), cert. denied, 526 U.S. 1070 (1999); Coggeshall v. State, 961
S.W.2d 639, 642-43 (Tex. App.—Fort Worth 1998, pet. ref’d) (en banc).
15. King v. State, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing
Kotteakos v. United States, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946));
Coggeshall, 961 S.W.2d at 643.
16. Kotteakos, 328 U.S. at 764-65, 66 S. Ct. at 1248.
17. See Burdine v. State, 719 S.W.2d 309, 320 (Tex. Crim App. 1986), cert.
denied, 480 U.S. 940 (1987).
18. See Tex. Penal Code Ann. § 31.03(b)(2) (Vernon Supp. 2004-05).
19. See id.
20. See Feldman v. State, 71 S.W.3d 738, 750 (Tex. Crim. App. 2002); Moore
v. State, 969 S.W.2d 4, 8 (Tex. Crim. App. 1998).
21. Landry v. State, 706 S.W.2d 105, 111 (Tex. Crim. App. 1985), cert.
denied, 479 U.S. 871 (1986).
22. 3 S.W.3d 547 (Tex. Crim. App. 1999), cert. denied, 529 U.S. 1070
(2000).
23. Id. at 567.
24. Harris v. State, 790 S.W.2d 568, 585-87 (Tex. Crim. App. 1989).